ALFARATA KEARNEY, as Administratrix, etc., Respondent, *v.*
AUGUSTUS CRUIKSHANK, Trustee, etc., Appellant.

Prior to the passage of the act of 1875 (Chap. 542, Laws of 1875), provid-
ing "for the apportionment of rents, annuities, dividends and other
payments," the rule of the common law prevailed in this state and an
annuity created by will, save one given by a parent to an infant child or
by a husband to his wife living, was not apportionable as to time.
The application of this rule is not restricted to cases where the date of
payment is explicitly declared in the will ; if no time is stated, the
annuity commences from the day of the testator's death, and the first
payment is due at the end of twelve months and thereafter year by year.
As said act is, by its terms, confined to annuities, etc., created by instru-
ments executed after its passage, or by wills taking effect thereafter, it
does not operate to make an annuity given by the will of a testator, who
died before its passage, apportionable.
*Reed* v. *Cruikshank* (46 Hun, 219) reversed.

(Argued October 10, 1889; decided October 29, 1889.

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made October 26, 1887, which directed a judgment in favor
of plaintiff upon submission of a case under section 1279 of
the Code of Civil Procedure.

The material facts and the questions presented therein are
sufficiently stated in the opinion.

*James L. Bishop* for appellant. There being no specific
direction in the will as to the time of payment of the annuity,
the law fixed the time of payment at the expiration of one
year from the death of the testator. (*Pearson* v. *Chase*, 10
R. I. 456 ; Rapelye & L. Law Dic. ; Anderson Law Dic. ;
*McLemore* v. *Blocker*, Harp. E. 272–275 ; Roper on Legacies,
877 ; *Gibson* v. *Bott*, 7 Ves. 189 ; *Booth* v. *Amerman*,
4 Brad. 129–133 ; *Irvin* v. *Irongmonger*, 2 R. & M. 531 ;
*Hawley* v. *Cutts*, 2 Freeman, 24 ; *Sullivan* v. *Winthrop*,
1 Sumner, 12 ; Lumley on Annuities, 291 ; *Hay* v. *Palmer*,
2 P. Wms. 501 ; *Howell* v. *Hanforth*, 2 W. Bl. 1017 ; *Ex
parte Smythe*, Swans. 349 ; *Frank* v. *Noble*, 12 Ves. 484 ;
*Dexter* v. *Phillips*, 121 Mass. 178–180 ; *Kerrigan* v. *Kerri-
gan*, 2 Redf. 517 ; *Tracy* v. *Strong*, 2 Conn. 659–664 ; *Carr*

v. *Bennett,* 3 Dem. 433; *Cochran* v. *Walker,* 4 id. 164; Williams on Executors, 835; 2 Redf. on Wills, 474; *Leathley* v. *Trench,* 8 Irish Ch. 401.) The annuity being payable annu- ally, there could be no apportionment. (*Ex parte Smythe,* Swans. 337, 349; *Pearley* v. *Smith,* 3 Atk. 260; *Sherard* v. *Sherard,* Id. 502; *Irving* v. *Rankine,* 13 Hun, 147; 79 N. Y. 636; *Wiggins* v. *Sweat,* 6 Met. 194; *Heizer* v. *Heizer,* 71 Ind. 526; Williams on Executors, 835.)

*John Graham* for respondent. The design and aim of a testator are to be regarded, and words are to be understood, when used, and to be supplied when not used to effectuate his object. (*Bliven* v. *Seymour,* 88 N. Y. 469; *Philips* v. *Davies,* 92 id. 199.) The intent of a testator, when it can be gathered, is equivalent to the most positive direction, and will prevail over a technical rule of construction. (*Delaney* v. *Van Aulen,* 84 N. Y. 16.) A very faint glimpse of inten- tion will overrule the general principle that a direction to divide a residue between the children of individuals named, requires a division *per capita* and will substitute a taking *per stirpes.* (*Ferrer* v. *Pyne,* 81 N. Y. 281.) The will of Mr. Lord virtually assigned — the assignment taking effect from the moment the will went into operation — " out of the residue and remainder of the net income of his said estate" so much as would pay the intestate $2,000 a year. (*Loder* v. *Hatfield,* 71 N. Y. 92.)

ANDREWS, J. The question involved in this case arises upon the claim of the representative of Sarah Louisa Reed for the apportionment of an annuity given to her by the will of Benjamin Lord. The testator died July 5th, 1851. By his will, after providing for the payment of his debts and funeral expenses, he directed his executors to take possession of his real and personal estate, receive the rents, interest, dividends and income thereof, and out of the same to keep the real estate in repair and pay the charges thereon and keep the personal estate invested and pay over the net income of the store, No. 147 Cedar street, in the city of New York, to one

Mary Van Veghten, and "out of the residue and remainder of said net income of my estate to pay to Sarah Louisa Reed, wife of David L. Reed, of the city of New York, it being my intention as a daughter to adopt her, the sum of $2,000 a year during her natural life, on her sole and separate receipt, as if she were a *feme sole*, free from the control, interference or debts of her present or any future husband." The testator then directed that the residue and remainder of the net income should be paid over and divided among his brothers and sisters, and that on the death of Mary Van Veghten the store No. 147 Cedar street should be sold and the proceeds divided among his brothers and sisters and one Lavina Knapp, and that on the death of Sarah Louisa Reed the "whole of the rest, residue and remainder of my estate, both real and personal," should be divided between the same persons. The annuity to Mrs. Reed was paid to her annually on the 5th day of July in each year after the death of the testator, up to and including the year ending July 5th, 1885. The annuitant died June 7th, 1886, and her administratrix demanded from the defendant, trustee of the estate of Benjamin Lord, payment of a proportionate part of the annuity from July 5th, 1885, the date of the last payment, to June 7th, 1886, the day of her death, which was refused on the ground that the annuity for the year was not due and payable until July 5th, 1886, and was not apportionable.

We are not at liberty to decide the question in this case upon our notions of natural equity and justice, provided the settled rule of law fixes the rights of the respective parties, and determines the question presented. At common law annuities were not apportionable, subject, however, to two exceptions, viz., where the annuity was given by a parent to an infant child (*Hay* v. *Palmer*, 2 P. Wms. 501; *Reynish* v. *Martin* (3 Atk. 330), or by a husband to his wife living separate and apart from him. (*Howell* v. *Hanforth*, 2 W. Bl. 1016.) These exceptions were founded on reasons of necessity, and the presumption that such annuities are intended for maintenance and are given

in view of the legal obligation of a parent to support his infant children, and of a husband to maintain the wife. But, with these exceptions, it was the uniform and unbending rule of the common law, recognized both by courts of law and equity, that annuities, whether created *inter vivos* or by will, were not apportionable in respect of time.

This rule, it has been said, "proceeds upon the interpretation of the contract by which the grantor binds himself to pay a certain sum at fixed days during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation." (Lumley on Annuities, 291.) It resulted from the general rule that, if the annuitant died before, or even on the day of payment, his representatives could claim no portion of the annuity for the current year. We refer to some authorities on the general subject. (*Ex parte Smyth*, 1 Swans. 337, note ; *Pearly* v. *Smith*, 3 Atk. 260 ; *Irving* v. *Rankine*, 13 Hun, 147 ; affirmed, 79 N. Y. 636 ; *Wiggin* v. *Swett*, 6 Met. 194 ; 3 Kent's Com. 470 ; Wms. on Exrs. 835 ; Hayes and Jarman on Wills, 172, note.) In England, statutes have been enacted, from time to time, changing the harsh and rigorous rule of the common law. The statute (4 and 5, Will. 4, chap. 22) was the first statute making annuities apportionable in respect of time. In construing this statute, some of the courts held that the statute covered continuing annuities only, that is, annuities not terminating with the life of the first taker. (*Queen* v. *Lords of the Treasury*, 16 Ad. & El. 357 ; *Lowndes* v. *Earl of Stamford*, 18 id. 425.) This led to the enactment of the comprehensive statute (34 and 35 Victoria, chap. 35) which made all annuities apportionable and declared that annuities should, "like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of them accordingly." There can be no doubt that, in a case like the present one arising in England, after the passage of these statutes, it would be held that the annuity was apportionable. But no statute was enacted in this state changing the rule of the common law and making annuities apportionable, until the

passage of the act (Chap. 542 of the Laws of 1875), and as this statute, by its terms, only applies to the annuities created by instruments executed after the passage of the act, and in case of wills, where the will takes effect thereafter, it does not affect the question in this case. There can be no doubt that, if the testator had, in his will, directed that the annuity of Mrs. Read should be payable at the end of each year, after his death, or in quarterly or half-yearly payments, or in other words, if he had, in terms, fixed the day of payment, the claim of the representative of Mrs. Read, that he was entitled to an apportionment, would, upon the settled rule of the common law, be rejected. The case of *Irving* v. *Rankine* (*supra*) is a precise authority that the rule of the common law was, prior to the act of 1875, the law of this state, and that an annuity payable by the terms of a will on a fixed day, was not apportionable. The rule was applied, in that case, to an annuity given to the wife of the testator, payable semi-annually from his decease, who died eight days before the semi-annual payment became due.

The learned counsel for the plaintiff insists that the common-law rule of the non-apportionability of annuities only applied where the day of payment was specifically fixed in the instrument creating it, and had no application to the case of an annuity given in general terms, as in this case, no day of payment being specified. It is quite difficult to see any ground for the alleged distinction. The ordinary and natural meaning of a direction by one person to pay to another a specified sum " annually," or " each year," is that the specified sum is to be paid in an annual or yearly payment. The word or phrase, naturally interpreted, would be regarded as fixing both the measure and time of payment. It would, we think, be contrary to the well understood meaning and characteristics of an annuity, and to the settled rule that in the absence of a different direction in the will or instrument creating it, an annuity is payable annually or yearly at the end of the year, to restrict the application of the common-law rule of non-apportionability to cases where the

date of payment is explicitly delared in the instrument
creating it. · The term annuity has been variously defined,
but the definitions although differing in form are substantially
alike in meaning.    In general terms it is " a yearly payment
of a certain sum of money granted to another in fee for
life or for years." (Williams on ·Executors, 809; see also,
Lumley on Annuities, 1; Bac. Abr. tit. Annuity.)    It has,
long been the settled rule that in case of a will, if no time is
fixed, an annuity given thereby commences from the day of
the testator's death, and the first payment is to be made at
the end of twelve months from that time.    (2 Wms. on Exrs.
1288; *Gibson* v. *Bott,* 7 Ves. 89; *Houghton* v. *Franklin,*
1 S. & S. 392.)    This accords with the definition of an
annuity, its inherent character, and the language of the tes-
tator as naturally construed.    We have found no case where
the distinction is made that where no time is expressly fixed
by the will for the payment of an annuity, it grows due like
interest, *de die in diem,* and in case of the death of the
annuitant within the year, is apportionable.    The authorities
are opposed to this view.    In *Carter* v. *Taggart* (16 Sim. 447),
a testator directed a fund to be formed for the purchase of
bank annuities, and charged them with the payment of £150
a year to his wife during her life.    The question was as to
the right of apportionment, the wife having died during
the year.    The will did not fix the time for the pay-
ment of the annuity, except in the general terms that
the wife was to be paid so much a year.    The court held the
annuity apportionable, but put its decision expressly upon the
statute changing the common-law rule.    *Trimmer* v. *Danby*
(23 L. J. Ch. 979) was the case of an annuity of £150 to
A. B. for life, no time of payment being fixed.    The annuitant
died eight days before the end of the year, and it was held by
KINDERSLEY, V. C., that under the act of 4 and 5, Will. 4.
the annuity was apportionable.    In deciding the case the vice
chancellor, referring to the act, said : "It is obvious that
this is the very case now before the court, namely
that of an annuity for life, in which, unless the annuity had

been declared to be apportionable by the act, *it would not have been so previously to this act.*" The rigid force of the rule that the construction, in the absence of a time fixed in the will, is that an annuity becomes due and payable only at the expiration of a year, and thereafter year by year, is illustrated by the cases of *Irvin* v. *Ironmonger* (2 Russ. & M. 531) and *Hawley* v. *Cutts* (1 Freeman's Ch. 23). In *Irvin* v. *Ironmonger* the testator gave an annuity for life and directed that the first year's annuity should be paid within one month from his death, and it was held that though the first year's payment was to be made at the appointed time, the payment of the second year did not become due until the end of that year. In *Hawley* v. *Cutts* the testator gave an annuity of £100 per annum and the chancellor denied an application to direct that payment should be made quarterly, saying that he would not alter the payment otherwise than it was in the will.

We perceive no indication on the face of the will in question taking the case out of the general rule. The testator might undoubtedly have directed that the annuity to Mrs. Reed should be apportionable, and if there was no express direction, if the intention to make it apportionable was inferable from any provision of the will, that intention would prevail. The fact that the rents of his real estate would, in the ordinary course, be collected quarterly, or at different periods within the year, or that the annuity is directed to be paid out of the income of the estate, are, we think, insufficient grounds for a construction in opposition to the general rule. The annuity is charged upon the net income of the whole estate of the testator, both real and personal, excluding the rents of 147 Cedar street. The income is not given as such, but a specified amount out of the income equal to the annuity. The executors are required to first pay out of the income charges and repairs on the real estate, and the amount required for these purposes must be first ascertained before it could be known whether the net income is sufficient to pay the annuity, a process naturally requiring a postponement of the payment

of the annuity for a period of time. Striking a yearly balance would be a usual and natural way of executing the trust. The circumstances are quite consistent with the view that the testator had in view an annual payment of the annuity, and it is difficult to suppose that he intended to subject his executors to the embarrassment of being obliged to make up an account of the income whenever called upon within the year by the annuitant. The whole title to the real and personal estate of the testator vested in the executors, subject to the performance of the trust to receive the rents, income and profits, and to distribute the net income as directed. The annuitant was not, as is claimed, an assignee. No title to the income, as such, vested in her, but she was entitled to enforce the performance of the trust in her favor.

The argument that the legislature when the act of 1875 was passed must have supposed that annuities not payable on a fixed day by the terms of a will or other instrument, were apportionable, for the reason that the act did not provide for such cases, even if it proceeds upon a sound construction of the act, does not seem at all conclusive. That the legislature may mistake the scope or application of a principle of law in enacting a remedial statute and leave out something which ought to be included, is clearly not inconceivable. But it may very well be concluded when the question arises that the words in the act of 1875 "made payable or becoming due at fixed periods" included as well annuities, the time of payment of which is fixed by construction of law, as annuities of which the time of payment is designated in the instrument creating them.

We think there is nothing in the submission which concludes the defendant from appealing to this court from the judgment below.

These views lead to a reversal of the judgment of the General Term, and judgment is ordered for the defendant on the submission, with costs.

All concur.

Judgment reversed.