WM. G. LYNCH, Appellant, v. J. P. HOUSTON, Executor, Respondent.

**Kansas City Court of Appeals, May 17, 1909.**

1. **ANNUITIES: Apportionment.** As a general rule an annuity is not apportionable either at common law or in equity unless the instrument granting it shows a contrary intention, there being some exceptions, as in case of an annuity payable to a widow in lieu of dower, or to minor children for support, which may be apportioned.

2. ————: ————: **Construction of Deed.** A deed conveying land in consideration of the payment to the grantor of a certain sum per annum "payable annually on the first day of March of each year until the death" of the grantor, "when all payments shall cease," had reference to the time of death and not to the time of payment, and disclosed an intention that the payments should continue to the grantor's death, and that the annuity should be apportioned upon the grantor's death before the time of payment.

**On Rehearing.**

3. **CONTRACTS: Intention of Parties.** The intention of the parties to a contract may be shown in a number of ways and there is no absolute rule for interpreting the intention of the parties to a contract, as it may be shown by a look, a gesture, an emphasis or tone of voice, and in writing, a mere word, phrase or sentence will put a meaning in a contract which may control implications of law.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*R. M. Reynolds, A. R. James* and *R. B. Ruff* for appellant.

The provision in the deed is for an annuity. The provision in the deed for an annual payment to Michael Lynch, due on the 1st day of March, 1897, and upon the

1st day of March, annually, thereafter, during the life of the said Michael Lynch, and to cease upon his death, was in effect a provision for an annuity, and the rights of the parties in connection therewith are to be determined by the principles of law applicable to annuities. 1 Am. and Eng. Enc. Law (1 Ed.), p. 593, 2 Cyc., 459; Nehls v. Sauer, 119 Iowa 441; Gallagher v. Herbert, 117 Ill. 160; Schmielding v. Dollmer, 13 Mo. App. 228. Broadly stated, "an annuity is a stated sum payable annually." 1 Am. and Eng. Ency. of Law (1 Ed.), p. 592. Bacon, Abridgment, Title "Annuity;" Wharton v. Cook, 10 Watts, 125, 36 Am. Dec. 151; In re Apples Estate, 66 Cal. 438; Bates v. Barry, 125 Mass. 83; Warren v. Gregg, 116 Mass. 304; Blight v. Blight, 51 Pa. 420; Pearson v. Chase, 10 R. I. 455; Mosser v. Lesher, 154 Pa. 87; De Haven v. Sherman, 131 Ill. 160; Lackawanna Iron & Coal Co., 37 N. J. Eq. 26; Irwin v. Walpert, 128 Ill. 527; Christy v. Harmon, 163 Ill. 225. The settled doctrine as to the apportionment of annuities, both by courts of law and equity, is that they are not to be apportioned, in respect of time. Henry v. Henderson (Miss.), 63 L. R. A. 618; Kearney v. Cruickshank, 117 N. Y. 95; Chase v. Darby, 110 Mich. 314; Heizer v. Heizer, 71 Ind. 526, 2 Cyc. 468; Mower v. Sanford (Conn.), 63 L. R. A. 630. The rule proceeds upon the interpretation of the contract by which the grantor binds himself to pay a certain sum at fixed days, during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation. Lumley, Annuities, 291; Henry v. Henderson, 63 L. R. A. 620, 2 Cyc., 468.

*D. D. Duggins* for respondent.

The parties construed the contract in the light and according to the theory that the land belonged to the grantor for life, and the courts will construe the contract according to that construction placed upon it by the parties. Patterson v. Camden, 25 Mo. 23; Dobbins v.

Edmonds, 18 Mo. App. 315; Rose v. Carbonating Co., 60 Mo. App. 33; Brewing Co. v. Water Co., 34 Mo. App. 49, 56. The vendor had the right to dictate how the payments should be made and that it should be paid in cash. Rogers v. Tucker, 94 Mo. 351. It is not in the breast of the court to make contracts, but if the contracts are of a legal character the courts will enforce them as they are written. Myers v. Christopher, 176 Mo. 594; Schubach v. McDonald, 179 Mo. 184. Courts will not resort to a strained and unnatural construction of the terms of a written contract in order to impose on a party to the contract a liability which neither the language of the agreement nor the situation of the parties justifies. Trust Co. v. York, 81 Mo. App. 342. The doctrine of equitable lien, or vendor's lien, is recognized in Missouri. Bennett v. Shipley, 82 Mo. 448; Pearl v. Hervey, 70 Mo. 160; DeLassus v. Poston, 19 Mo. 425.

ELLISON, J.—The petition filed in this cause seeks to recover of defendant as executor of the estate of Michael Lynch the sum of $1000, as rent alleged to have been received by said executor from the tenant of plaintiff's land for the year beginning the 1st of March, 1907, and ending the 1st of March, 1908. The trial court rendered judgment for plaintiff for the sum of $282, and he, being dissatisfied with that amount appealed.

It appears that plaintiff is the son of the deceased, Michael. That the latter owned a farm of two hundred acres in Saline county. That on the 13th of April, 1896, he conveyed it to plaintiff in consideration of natural love and affection and other named considerations, among them being that "the grantee, Wm. G. Lynch, hereby agrees to pay to the grantor, Michael Lynch, during his natural life, the following sums of money: nine hundred dollars per annum for five years commencing March 1, 1897, and the first payment to be due at that date, and after the first five payments, then the sum of seven hundred and fifty dollars per annum, payable

annually on the first day of March of each year until the death of said Michael Lynch, when all payments cease. And for the payment of said sums of money to said Michael Lynch as aforesaid, a lien is hereby retained, constituted and made in favor of said Michael Lynch on the lands hereby conveyed."

At the date of the deed Michael Lynch was not in the manual possession of the land, it having been rented by him to a tenant, and he continued to rent it until his death. He collected the rents and applied them in payment of the sums due him under the deed until his death which occurred on the 15th of February 1908, a period of nearly twelve years. On the 21st of August, 1905, he rented it for a period of five years, at $1000 per year, commencing the 1st of March, 1906, and ending the 1st of March, 1911, the rent becoming due on the 1st of January of each year. As just stated, Michael died on the 15th of February, 1908, and this defendant, in April following, collected the past year's rent, due the 1st of January, 1908, and put the funds into the estate.

It is evident from the amount of the judgment rendered for plaintiff that the court, in effect, charged defendant with the $1000 he received from the tenant and then credited him with $750, the annual payment due Michael, less $31.25 allowed on account of the latter's death one-half month before such annual payment was due. That is, he credited defendant with $718.75, the proportionate amount due deceased at date of his death, which left a balance of $281.25, for which judgment was rendered.

There has been much discussion by counsel concerning the question whether the annual payments reserved in the deed to plaintiff constituted an annuity or a rent charge. Plaintiff's theory is that they were an annuity and that an annuity could not be apportioned—that is to say that if the annuitant died before the annual day of payment, nothing would be due for that year; and that, therefore, as Michael died on the 15th of February,

1908, preceding the 1st of March, the day of annual payment, nothing was due his estate for that entire year and therefore the trial court erred in making any allowance therefor out of the sum collected by defendant.

The general rule at common law as well as in equity is that an annuity is not apportionable in respect to time. It is said in Nehls v. Sauer, 119 Iowa l. c. 441, that "The practically universal holding of the courts appears to be that an annuity will not be apportioned, and if the annuitant dies during the year, even though it be on the last day, before the payment falls due, the right to demand the annuity dies with him, and his executor can recover no part of it."

There are exceptions to this rule which arise out of the nature and object of the annuity itself. Thus an annuity to be paid the widow in lieu of her life dower estate, or to minor children for support, may be apportioned so that she or they will receive a proportionate amount for the year in which either may die. [Blight v. Blight, 51 Pa. St. 420; Gheen v. Osborn, 17 Serg. & Rawle, 171; Sweigart v. Feay, 8 Serg. & Rawle, 299; Lackawanna Iron Co's Case, 37 N. J. Eq. 26.] The latter case was where land was conveyed in consideration of an annuity reserved secured by bond and mortgage to the grantor and the court held the annuity apportionable. But it will be observed that the case was influenced by the fact that part of the consideration for the deed was the release of dower in the grantor's wife.

But the rule itself, as stated in Nehls v. Sauer, *supra*, is approved and emphasized in what appears to be an unbroken line of cases. [Kearney v. Cruikshank, 117 N. Y. 95; Chase v. Darby, 110 Mich. 314; Heizer v. Heizer, 71 Ind. 526.] Each of the cases here cited, excepting that of Kearney v. Cruikshank, was where the father, as in this case, conveyed lands to his son in consideration of annual payments of stated sums during life. In Dexter v. Phillips, 121 Mass. 178, it is said that "at common law, followed in chancery, sums of money,

payable periodically, at fixed times, are not apportionable during the intervening periods." The rule "proceeds upon the interpretation of the contract by which the grantor binds himself to pay a certain sum, at fixed days, during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation." [Kearney v. Cruikshank, *supra.*] The rule is conceded to be harsh, yet is declared to be "unbending." We deduce from the authorities on the question that the contract is looked upon as in effect engaging the grantor of the annuity to pay to the grantee a certain annual *full* sum on the day fixed *if he be alive on that day;* and that a payment of a part of that sum if he be dead, has not entered into the agreement.

But while the courts should not search for questionable reasons with which to break in upon long established rules of law, however harsh they may be, yet they should not overlook any provision in the contract itself which discloses an intention that the annuity shall be apportioned. Thus, in Kearney v. Cruikshank, *supra,* where a will directed an annuity to be paid, the court stated in the course of the opinion that the testator might have directed that the annuity "be apportionable, and if there was no express direction, if the intention to make it apportionable was inferable from any provision of the will, that intention would prevail."

So, in directing our attention to the above quoted terms of the deed in this case, we find that they do not stop at a mere provision for an annual payment to the father until his death, but add that at his death "all payments cease." Now, we have already stated that a provision for annual payments to the annuitant at a stated time "during life" is interpreted to mean as long as he shall live to such time of payment. But when such usual mode of annuity contract is departed from and there is added thereto the provision, and at his death all payments shall cease, it is nothing less than saying

they shall continue to the day of his death. In other words, a mere provision for an annual payment of a certain sum at a certain time, is referable to the time of payment, and if the annuitant is not alive at the time, no payment is due. But if there is added to such provision, that at his death payments shall cease, it alters the entire meaning and the provision is referable to the time of death instead of time of payment. If this view of the contract is correct, it follows that the trial court was right in deciding that the annuity was apportionable by force of the contract itself.

But another phase of the case has been made the subject of a learned and interesting discussion by counsel. It involves the question whether the contract does not, in fact, provide for a rent charge upon the land instead of an annuity. It is frequently difficult to distinguish between a rent charge and an annuity. The latter is generally a charge against the person, whereas a rent charge is against land in the hands of the purchaser, and it arises out of the land.

An annuity is "A yearly sum stipulated to be paid another in fee, or for life, and chargeable only on the person of the grantor." [Bouvier's Law Dictionary, 124.]

An annuity is "A yearly payment of a certain sum of money granted to a person for life, or years, or in fee, chargeable upon the person of the grantor; it therefore differs from a rent charge which is charged upon the land." [Wharton's Law Dictionary, 43.]

"An annuity is a thing very distinct from a rent charge, with which it is frequently confounded; a rent charge being a burden imposed upon and issuing out of lands, whereas an annuity is a yearly sum chargeable only upon the person of the grantor." [2 Blackstone, 40.]

An "annuity is chargeable upon the person of the grantor, for if the annuity was made chargeable upon

land, it would then become a rent charge." [2 Kent's Com. (12 Ed.), 460.]

The contract contained in the deed of Michael Lynch (which became binding on this plaintiff by his acceptance of it) shows no indication of an intention to charge the rent or production of the land with the annual payment. It was the mere personal obligation of plaintiff and thereby, in that respect, came within the terms of the definition of an annuity. The payment of this obligation is secured by a lien on the land, it is true, but that does not affect the personal character of plaintiff's obligation, any more than a mortgage affects the personal character of a promissory note which it secures. The annual payment is to be made by plaintiff at all hazards, it making no difference whether anything by way of rent or production was obtained out of the land. The personal obligation apart from any consideration of what the land produced stamps the contract as that of an annuity notwithstanding such annuity is secured by a lien on the land. In Bacon's Abridgment (title "Annuities") it is stated that "An annuity, strictly taken, is a yearly payment of a certain sum of money granted to another in fee simple, fee tail, or life, or years, charging the person of the grantor only: if payable *out* of lands, it is properly called a rent charge; but if the person *and estate be made liable,* as they most commonly are, then it is generally called an annuity." (Italics ours.) Payment out of land by way of the land's rent or production, is a different thing from the land being made liable. The former, with right of distraint, would be a rent charge at common law; the latter is a charge against the land for which it, itself, may be sold in discharge of the annuity. We therefore refuse to consider this contract as being a rent charge.

We do not consider the fact that the deceased, Michael, rented the land, collected rents and applied them to the payment of the annual sums due him had any effect on the plain terms of the contract set out in

the deed. It was done by acquiescence of the son and the annual debt was allowed to be discharged in that way. We are satisfied with the view of the trial court and hence affirm the judgment. All concur.

## ON MOTION FOR REHEARING.

The only suggestion necessary to notice in appellant's motion for rehearing is that when the parties inserted in the contract the additional phrase that all payments should cease at the death of Michael Lynch, they only put into the contract, in words, what the law would have implied without the insertion of such words. And therefore appellant (in effect) insists it should not be held that they intended anything different from what would have been the interpretation of the contract if those words had not been added.

The fact that the law would imply a thing unsaid does not necessarily affect the question of what was intended by saying it. Keeping within bounds of fact, as distinguished from presumption, it is safe to say that these parties knew nothing of the rule of law that annuities were not apportionable, and when they inserted in the contract the additional phrase that payments should cease at death, it seems to clearly show that they intended they should continue up to the death. The effect of the law as to an unapportionable annuity is not that payments shall cease at death, but, in reality, that they shall cease at the last annual payment next *before* death; that is, before a death occurring prior to the day for the next payment; and when words are used showing that not to be the intention they should be allowed their natural force and meaning.

Intention may be clearly shown in a great variety of ways. Aside from some technical rules adopted for the general good there is, ordinarily, no hard and fast rule to govern the interpretation of an intention. In conversation it is shown by a look, a gesture, an em-

phasis or tone of voice. In writing, a mere word, phrase or sentence will put a meaning on a contract which may control implications of law and which will give it a direction and application contrary to what it otherwise would have received.

We are satisfied, as has been already explained, that the parties here intended that if Michael's death occurred before the day when an annual payment would have been due, the amount of that payment should be apportioned and payment be made of a proportionate part thereof up to his death. The motion should be overruled.