Bartos v. Skleba.

STANLEY BARTOS, ADMINISTRATOR, APPELLANT, V. MARY SKLEBA, APPELLEE.

FILED DECEMBER 21, 1921. No. 21839.

1. Annuities: RENT CHARGE. A reservation in a deed which binds the grantee, her heirs and assigns, to deliver to the grantor during his natural life a one-third part of all grain annually raised on the land conveyed, and makes the same a charge upon the land, creates a rent charge, as distinguished from an annuity, notwithstanding that the parties designate the reservation an "annuity."

2. Executors and Administrators: RENT CHARGE. A reservation in a deed providing that the grantee shall deliver to the grantor a fixed portion of all crops annually raised on the land conveyed during the lifetime of the grantor, and creating a lien therefor upon the land, and providing that the reservation shall *be null and void at the death of the grantor*, shows an intention on the

part of the contracting parties that the rent charge shall con-
tinue to the death of the grantor, and, in such case, the personal
representative of the deceased grantor is entitled to recover the
part reserved in any crop actually severed from the soil before
the death of the decedent.

APPEAL from the district court for Saline county:
RALPH D. BROWN, JUDGE. *Reversed.*

*Bartos & Bartos,* for appellant.

*Glenn N. Venrick, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN,
ALDRICH, DAY and FLANSBURG, JJ.

MORRISSEY, C. J.

Plaintiff is the administrator of the estate of Anna
Vrbsky, deceased, and brings this suit to recover from de-
fendant what he alleges to be the one-third value of the
crops grown by defendant during the year 1916 upon a
certain farm, which plaintiff's intestate and her husband,
Joseph Vrbsky, had conveyed to defendant. The deed,
which is dated March 3, 1909, a copy of which is set out
in the petition, conveys the 160 acres of land described
therein to defendant in consideration of $5,000, "and
other valuable consideration." It provides for specific
payments to be made by the grantee to certain of the
grantors' children after the death of the grantors, and
"upon further condition that the grantee herein, her heirs
and assigns shall give and deliver to the grantors herein,
or either of them, annually during their natural life,
one-third of all the crops annually raised on the above-
described land, all of said provisions to be a first and
valid lien against said land until fully complied with and
paid, the last proviso as to annuity to be null and void at
death of both grantors herein." This suit is based upon
the conditions quoted.

It is alleged that Joseph Vrbsky departed this life
February 14, 1915, and that Anna Vrbsky departed this
life September 13, 1916; that the latter was during her

lifetime entitled to an undivided one-third of all of the crops raised on the premises during the year 1916, and that the crops were as follows: "1,247 bushels of wheat, all of which was threshed out prior to the date of the death of the said Anna Vrbsky, 584 bushels of oats which was all in stack at the time of the death of the said Anna Vrbsky, but which was not threshed out until about two weeks after the date of the death of the said Anna Vrbsky, and 900 bushels of corn which was in the field, growing and maturing, but cultivated and laid by at the time of the death of the said deceased."

It is alleged that all of this crop was wrongfully appropriated by defendant to her own use on or about May 20, 1920, and that at the date of the conversion the wheat was worth $2.85 a bushel, the oats 95 cents a bushel, and the corn $1.65 a bushel, aggregating $1,864.57. It is further alleged that plaintiff made proper demand for the grain, or for the value thereof; that the demand was refused; and judgment is prayed for its alleged value.

To this petition defendant interposed a demurrer; the point relied upon being: "The petition does not state facts sufficient to constitute a cause of action against the defendant." The demurrer was sustained by the court, and plaintiff has appealed.

It is the contention of plaintiff that the rents reserved, notwithstanding the use of the term "annuity" in the deed, were not, strictly speaking, an annuity within the old common law definition of that term, and, therefore, the nonapportionment rule so long applied to annuities can have no application here.

"In its technical meaning, an annuity is defined as 'a stated sum, payable annually,' or as a yearly payment of a certain sum of money granted to another in fee, for life, or for years, and chargeable only on the person of the grantor." 3 C. J. 200, sec. 1.

Appellee submits that in the construction of deeds the intention of the grantor, as manifested by the words of the writing taken in connection with the surrounding

circumstances, must be carried into effect, provided in so doing no rule of law is violated or sound policy disturbed, and if the deed is ambiguous it should be construed most strongly against the grantor. This observation may be conceded. It is also said that the common-law definition of an annuity has been broadened so that the provision of the deed may properly be termed an annuity. In support of this statement appellee cites *In re Kohler's Will*, 183 N. Y. Supp. 550; but, as we read this opinion, it is not at variance with the definition we have quoted, nor does the rent reserved fall within any recognized definition of an annuity.

The parties in drawing the deed used the term "annuity" in connection with the rent reserved, but whether it was inadvertently used or used in ignorance of its legal significance cannot change the contract. The contract did not provide for a fixed and stated sum payable annually, or otherwise, but provided for an indefinite amount, varying according to husbandry, weather conditions, and the fluctuations of the market. It fixed no definite sum as a charge upon the grantor, nor upon the land.

Subject to certain well-defined exceptions, it was the rule of the common law that annuities were not apportionable in respect of time, and, if the annuitant died before, or even on the day of, payment, his representative could claim no portion of the annuity for the current year. Appellee contends that this rule should be applied in the instant case, and asserts that it has been applied to rents due from land, as well as to annuities generally. The leading case cited in support of this contention is *Haynes v. McDonald*, 158 Ill. App. 294. In that case however, the matter in controversy was a fixed and determined sum to be paid in cash. The court found that under the contract the rent was not due and payable until the end of the term of the lease, which was almost four months after the death of the lessor, and held that rent accruing after the death of the owner of the demised

premises was a chattel real and went to the heir, or devisee, and not to the administrator. The facts in that case differ materially from those presented here.

Appellee also urges the clause in the deed which reads: "All of said provisions to be a first and valid lien against said land until fully complied with and paid, the last proviso as to annuity to be null and void at death of both grantors herein." It is said that this proviso should be construed to mean that at the death of the last of the grantors the provision for the delivery of a share of the crop should then lose its legal efficacy and be ineffectual to bind appellee or serve as a foundation for any claim whatsoever.

In *Lynch v. Houston,* 138 Mo. App. 167, the court had under consideration a clause in a deed very similar to the clause we are now discussing. In that case the deed called for the payment of a definite sum on the first day of March of each year until the death of the grantor, when all payments should cease. In its discussion of this phase of the instrument the court said: "In directing our attention to the above-quoted terms of the deed in this case, we find that they do not stop at a mere provision for an annual payment to the father until his death, but add that at his death 'all payments cease.' Now, we have already stated that a provision for annual payments to the annuitant at a stated time 'during life' is interpreted to mean as long as he shall live to such time of payment. But when such usual mode of annuity contract is departed from and there is added thereto the provision 'and at his death all payments shall cease,' * * * it alters the entire meaning and the provision is referable to the time of death instead of time of payment. If this view of the contract is correct, it follows that the trial court was right in deciding that the annuity was apportionable by force of the contract itself."

This question was again considered by the court on rehearing, where it was urged that the phrase in the con-

tract providing that all payments should cease at the death of the grantor was declaratory only of what the law would have implied, and, therefore, the contract should not be given this interpretation because of its insertion. But the court said: "The fact that the law would imply a thing unsaid does not necessarily affect the question of what was intended by saying it. Keeping within bounds of fact, as distinguished from presumption, it is safe to say that these parties knew nothing of the rule of law that annuities were not apportionable, and when they inserted in the contract the additional phrase that payments should cease at death, it seems to clearly show that they intended they should continue up to the death."

Holding, as we do, that the rent reserved was not an annuity, it may be argued that the language quoted is not applicable, but to us it seems otherwise. It being persuasive even though dealing with what was held to be an annuity, it may surely be applied where the thing dealt with is not an annuity but only a rent charge. We are convinced that the representative of the last surviving grantor should receive the one-third part of any crop which had been produced on the premises and severed from the soil prior to such grantor's death. "Crops and products of whatever character, actually severed before the death of the decedent, go to the representative." 23 C. J. 1142, sec. 340.

The administrator is entitled to recover for intestate's share in the wheat and oats, they being severed from the soil, but he has no claim upon, or interest in, the corn which was not matured.

It follows from what has been said that the district court erred in sustaining the demurrer to plaintiff's petition, and its judgment is reversed and the cause remanded.

REVERSED.