## IN RE WEILL'S WILL.

### LAPINSKA v. CLARKE.

[No. 16,427. Filed December 22, 1942. Rehearing denied February 1, 1943. Transfer denied March 1, 1943.]

*Ralph Bamberger, Julian Bamberger, Isidore Feibleman,* and *Charles B. Feibleman,* all of Indianapolis, for appellant.

*Charles B. Clarke, Walter C. Clarke,* and *Thomas J. Blackwell, Jr.,* all of Indianapolis, for appellee.

STEVENSON, J.—This action was brought by the appellant to recover certain funds from a trust established under the will of one Max Weill.

The petition was filed by the appellant, and alleged that he was one of the surviving heirs at law of one Jennie Lapinska who died February 20, 1937. The proceeds of the trust which he seeks to recover result from the provisions of the last will and testament of Max Weill, uncle of said petitioner and brother of said Jennie Lapinska. Item VI of this will reads as follows:

"After the payment of the bequests hereinabove made in my will, I give, devise and bequeath all the rest, residue, and remainder of my estate, of every kind and character whatsoever, whether real, personal or mixed, and wherever the same may be located, to my brother, HARRY WEILL, to be his absolutely and forever, and in fee simple, SUBJECT ONLY HOWEVER, to the following condi-

tion, namely that a sum of money, or stocks, bonds, or other securities sufficient to produce an income of FIFTEEN HUNDRED DOLLARS ($1500.00) a year be set aside by my said brother Harry Weill, as a trust fund for the use and benefit of my sisters, JENNIE LAPINSKA AND ROSE WEILL, and they, or either of them to have the benefit of the income throughout their lives, or the life of either of them. My brother Harry, as such Trustee, shall have full authority to expend such income for the benefit of either of my sisters entirely as he shall see fit, and he shall have the power, if in his judgment it becomes necessary or advisable so to do, to use a portion of the principal for such purpose. If my brother Harry should die before either, or both of my sisters, then I name, nominate and appoint, the Union Trust Company, of Indianapolis, Indiana, as Trustee over such fund, for the same uses and purposes, and with the same power and authority as hereinabove in this item of this will set forth. At the death of my sisters, such trust fund, or so much thereof as may then be on hand, shall belong to, and I hereby give, devise and bequeath the same, to my brother, HARRY WEILL, of Indianapolis, Indiana, together with the increase or increment from such trust fund, if any. The trust created in this item of my will shall be a private trust, without accounting to court, and without bond, and the Trustee shall have the right to buy and sell stocks, bonds, or other securities; to invest and reinvest funds; to accept and execute any and all instruments, and to manage such trust as such Trustee may see fit and proper. And I further repeat and declare that subject only to the payment of the bequests and to the trust in this will contained, my brother HARRY WEILL, shall have all of my estate."

The petition alleges that the said Max Weill died on the 21st day of February, 1929, and the trustee herein named, to wit: Harry Weill, qualified as trustee, and subsequently died on the 26th day of August, 1933, and the Union Trust Company became successor trustee.

The petition alleges that the annual income of

$1,500.00 per year, as intended by the testator, was not paid to the said Jennie Lapinska during her lifetime, and, that subsequent to her death, the Union Trust Company, as trustee, has made its final report and has paid into the clerk's office the sum of $1,838.46, for the benefit of those lawfully entitled thereto. The petitioner alleges that this sum was in law the property of the said Jennie Lapinska during her lifetime, and should be paid to the appellant as her heir.

By way of answer to this petition, the appellee, Walter C. Clarke, administrator *de bonis non* of the estate of Harry Weill, deceased, filed his petition, under which he claims title to the money on hands for and on behalf of the estate of Harry Weill, residuary legatee, under the will by which the trust is created.

To this petition, the appellant filed an answer alleging that he had been compelled to expend the sum of $950.00 for the support of Jennie Lapinska during her lifetime because of the failure of the trustee to pay to her the annual income of $1,500.00 per year as provided in the will. This amount he seeks to set up as a claim against her estate, or to establish title to himself in such an amount out of the funds on hands in the clerk's office.

On the issues thus formed, the case was submitted to the court for trial, and the court, after hearing the evidence which consisted largely of stipulated facts, found for the appellee and against the appellant, and entered judgment that the appellee was entitled to the money in the hands of the clerk. The appellant filed a motion for new trial which was overruled, and this appeal has been perfected.

The chief question presented by this appeal is whether or not the will of Max Weill gave Jennie Lapinska merely the income from a trust fund selected by the

trustee or gave her an annuity of $1,500.00 per year. The facts, as stipulated by the parties, disclose that the total amount of the estate of Max Weill, deceased, amounted to more than $84,000.00. Harry Weill, as executor, turned over to himself as trustee certain stocks and certificates totaling an appraised value of $15,075.00. At the time these securities were set aside as the trust fund, they were sufficient to produce an income of $1,500.00 per year or more.

The facts further disclose that, at the time of the death of Max Weill, Rose Weill was an inmate of the Central Hospital for the Insane in Indianapolis, and there died on September 1, 1930.

Dividends were paid on the stocks and securities held by the trustee, and pursuant to the provisions of the trust, the trustee paid to Jennie Lapinska the sum of $125.00 per month until July 1, 1931, thereafter payments were paid to Jennie Lapinska over a period of twenty-four months in a sum totaling $861.55. The stocks and certificates which constituted this trust fund ceased to pay dividends prior to July 1, 1931, and were subsequently sold by the Union Trust Company as trustee. From the sale of these securities, $309.76 was paid to Jennie Lapinska in December, 1936, and no other payments were made to her by the said trustee. The $1,838.46 was the balance of this trust fund which the Union Trust Company has paid into the clerk's office. The estate of Harry Weill was closed as insolvent in June, 1936.

Under these facts, the appellee contends that the trustee performed his whole duty under the provisions of the will when he selected and set apart stocks and securities sufficient to produce an income of $1,500.00 per year. The appellee further contends that having done so, the only interest which Jennie Lapinska and

her sister had in such trust was the right to receive the income therefrom, and the same could not be augmented by any portion of the *corpus* of the trust.

The appellant contends that under the terms of the will an annuity of $1,500.00 per year was devised to the said Jennie Lapinska and Rose Weill, and that the trustee was obligated to make such payments annually, and, if it became necessary, was authorized and required to use a portion or all of the *corpus* of the trust to enable him to meet such annual payments.

In order for us to determine the nature and character of the bequest, it is necessary for us to first determine the intention of the testator as disclosed by the provisions of his will. It will be noted that the brother of the testator, Harry Weill, was given the residue of the testator's estate. Out of this residue, however, the brother was required to set aside "a sum of money, or stocks, bonds, or other securities, sufficient to produce an income of $1,500.00 a year." This income was for the benefit of the sisters, Jennie Lapinska and Rose Weill, so long as they or the survivor of them should live. This will further provided that if the trustee should see fit so to do, he should have the power to use a portion of the principal or *corpus* of the trust for the benefit of his sisters. At the death of said sisters, this trust fund, or so much thereof as may then be on hand, was devised and bequeathed to the testator's brother, Harry Weill. It is apparent to us that the testator, by the provisions of his will, intended to confer a benefit upon his sisters therein named. This benefit was to be in the form of an income for the sisters throughout their lives, or the life of either of them. This income the testator indicated should be in the amount of $1,500.00 a year, and if this income was not sufficient in the trustee's judgment, the trustee was

authorized to use a portion of the principal of the trust
for the use and benefit of his sisters.

With this intention manifest by the terms of the will,
we are faced with the problem of determining whether
such bequest is a gift of an income or an annuity.
The question is not free from difficulty. A very
full discussion of the subject of gifts of income,
annuities, support, etc., is to be found in Vol. 3 of Page
on Wills. Section 1172, of that work, reads in part as
follows:

"An annuity in the ordinary sense of the term is
a right to the payment of a specified sum of money
at stated intervals, usually annually or at aliquot
parts of a year. Whether an annuity is given, and
what the amount thereof, depends upon the provi-
sions of the will. If it is doubtful whether testator
intends to make a gift of the income or to create
an annuity, the question is one of testator's inten-
tion which is to be ascertained, as a rule, by finding
from the will as a whole when read in the light of
the surrounding circumstances whether he in-
tended, on the one hand, to give a fixed sum of
money payable at stated intervals, sometimes out
of the income alone, but more frequently out of
the income and also out of the principal if the
income is insufficient, or whether, on the other
hand, he intended to give the income of the prin-
cipal fund whether it might be great or small. A
gift of the income of a specified fund or a gift of
a part of such income is not an annuity. A gift
of a certain amount to be paid at stated intervals
out of the income if it is sufficient, with power to
draw upon the principal for deficiencies, is an
annuity."

In the case of *In re Burton's Will* (1935), 281 N. Y.
S. 579, 582, the court said:

"What is the distinction between an annuity and
an income? 'An annuity is a fixed amount directed
to be paid absolutely and generally without con-
tingency. An income embraces only the net profits

after deducting all necessary expenses and charges, and consequently is uncertain in amount.' Remsen, Preparation of Wills and Trusts (2d Ed.), p. 163. 'By definition a gift of an annuity confers upon the legatee or beneficiary a right to a fixed and certain sum of money. On the other hand, a gift of rents, profits or income entitles the beneficiary to a sum which is uncertain, being dependent upon the actual earnings of the corpus or principal.' "

Similar language is found in the case of *Welch* v. *Hill et al.* (1914), 218 Mass. 327, 328, 329, 105 N. E. 1067. In this case the testator gave to two trustees "a sufficient sum in trust to invest to pay to said Ruth T. Field the sum of twelve hundred dollars per annum in quarterly payments during her life and at her decease, I order the principal, required to produce this annuity of twelve hundred dollars per annum to be added" to other trust funds described in the will. In determining the character of this devise, the court said:

"The true construction of the clause of the will is that it created an annuity for the benefit of Ruth T. Field during her life. The testator describes it as an 'annuity.' The description of the way in which it is to be provided and paid makes it an annuity. An annuity imports the payment annually of a fixed sum. The language of this will shows that it is to be paid each year without diminution or contingency. It cannot be satisfied by the payment of the income of a fund or of any fluctuating or variable sum."

It is apparent to us that the testator, by the language used, intended to confer upon his sisters an income for life. This income was to be certain in amount each year. The securities selected were to be "sufficient" to yield such income. Realizing that the securities so selected might not be sufficient at all times to produce such an annual income, the trustee was given authority to resort to the *corpus* of the trust,

in case the need arose. When these securities shall have accomplished the purpose of providing the income, such as remained thereof, if any, were under the provisions of the will, made a part of the residuary estate. The controlling thought of the testator seemed to be that the selected securities should first provide for the needs of his sisters, and until that purpose is accomplished, they are subject to this primary obligation. Had it been the intention of the testator to devise only the income, much or little, from a certain block of securities, he might well have selected these securities himself. It would then not be necessary for him to have provided that "the trustee shall have the right to buy and sell stocks, bonds, or other securities; to invest and reinvest funds; to accept and execute any and all instruments, and to manage such trust as such Trustee may see fit and proper."

In discussing a similar provision made for a widow, the court, in th ecase of *Merriam* v. *Merriam* (1900), 80 Minn. 254, 261, 83 N. W. 162, said:

> "It is far more reasonable, in searching for the intention of the testator, to treat the authority which the testator has given the trustees to make reinvestments, and to deal with the estate for the purpose of obtaining other or new securities to carry out his wishes, to apply, in furtherance of the positively expressed intention that the securities selected shall be 'sufficient,' the natural conclusion that the trustees are authorized to keep the amount of the securities sufficient, that they might add to those already selected others then in existence or to be created, within the clearly-expressed authority delegated to them to fulfill the primary purpose of the testator, viz., to have a fund 'sufficient' to secure the widow $8,000 annually each year during her life."

It is apparent to us, therefore, that the testator in the case at bar intended to provide for his sisters a fixed

annual income, which should be available in the hands of the trustee for their use and benefit for and during their life or the life of either of them. It was not a bequest of the interest or income from a fixed amount.

This distinction between income and annuity is clearly stated in the case of *Peck* v. *Kinney* (1905), 143 F. 76, 80. The court said:

> "There is this distinction between income and an annuity. The former embraces only the net profits after deducting all necessary expenses and charges; the latter is a fixed amount directed to be paid absolutely and without contingency. Ex parte McComb, 4 Bradf. Sur. (N. Y.) 151, 152. 'An annuity is defined as "a stated sum, payable annually" (Pearson v. Chace, 10 R. I. 455), or as "a yearly payment of a certain sum of money granted to another in fee, for life, or for years." Kearney v. Cruikshank, 117 N. Y. 95, 22 N. E. 580; Bartlett v. Slater, 53 Conn. 102, 22 Atl. 678, 55 Am. Rep. 73.' Goodyear Shoe Machinery Co. v. Dancel, 119 Fed. 692, 56 C. C. A. 300. It is a grant of a certain sum of money payable at the expiration of fixed, consecutive periods, for a definite term or for life."

The annual payment of $1,500.00, being in effect an annuity, it follows, therefore, that the annuitant is entitled to have any arrears in payment made up out of the *corpus* of the trust.

> " ' "If there is a clear gift of an annuity, a direction to set a fund apart to secure it, which is to fall into the residue upon the death of the annuitant, does not disentitle the annuitant to have arrears made up out of *corpus*, since the direction is merely a means to the end." Theobald on Law of Wills (2nd ed., p. 636). "If the capital is given over subject to or after payment of the annuities, the *corpus* is liable." (Id. p. 637.)
>
> " 'If the will provides that a certain sum be paid annually or monthly to the widow, and that, at her death, the residue be divided between, or paid over to, other persons, the intention would

seem to be that the capital shall be drawn upon to make up the deficiency in the annuity, or monthly or yearly allowance. In such case, the residue is what is left of the *corpus* after it has been used for the purpose of making up the deficiencies in the annuity. But where the terms of the gift over show that the testator intended the fund to be continued in its integrity during the life of the annuitant, and in that state to go over, the *corpus* cannot be resorted to to make up a deficiency in the annuity.' " *Moody Bible Institute of Chicago* v. *Pettibone et al.* (1937), 289 Ill. App. 69, 77, 6 N. E. (2d) 676.

The record in this case discloses that from July 1, 1931 to July 1, 1933 the trustee paid out for the benefit of Jennie Lapinska the sum of $861.55. Nothing further was paid to her by the trustee, and no dividends were received from the trust property until July 10, 1936, when certain shares of stock were sold for which the trustee received the sum of $309.76. This amount the trustee paid to Jennie Lapinska on December 22, 1936, and this was the only payment that the Union Trust Company of Indiana, as trustee, made to her or for and on her behalf.

The record further shows that during the time that the Union Trust Company acted as trustee demands were made upon the trustee for the payment of these benefits to the said Jennie Lapinska. The record further discloses that the said Jennie Lapinska was in need of financial assistance during these years, and that the appellant herein paid out for her use and benefit, and for her necessary maintenance and support, the sum of $950.00.

It is apparent to us that the trustee was both authorized and obligated by the provisions of the will to use the *corpus* of the trust for the benefit of Jennie Lapinska during her lifetime, to the extent, at least, of $1,500.00 per year. This right the said

Jennie Lapinska could enforce during her lifetime, and it was a chose in action which passed to her personal representative upon her death. § 2-403, Burns' 1933 (Supp.). The trustee recognized this right during the existence of the trust, and paid to her proceeds derived from the sale of part of the trust property. She was entitled to be paid more during her lifetime than now remains in the *corpus* of the trust. The balance remaining in the trust estate, therefore, may be recovered by the heirs of Jennie Lapinska or by her personal representative.

It is clear that the trustee, Harry Weill, or his successor trustee, by withholding the payments lawfully due to the beneficiaries of the trust cannot thereby augment the estate of the said Harry Weill as residuary legatee, to whom the remainder of the trust estate, if any remained, was bequeathed. In the case of *In Re Toms' Estate* (1914), 147 N. Y. S. 550, an annuity was provided for the testator's wife in the amount of $200.00 per year. The remainder of the trust was bequeathed to residuary legatees. The $200.00 a year annuity was not paid and at the time of the death of the widow there was a deficiency owing her of more than $1,000.00. The question arose as to whether or not the son and sole heir of the widow was entitled to the deficiency to be paid from the trust property, or whether it should be distributed to residuary legatees. The court said:

"The executor himself is one of the persons entitled to a distributive share of the residuary property. I do not think it should be held that by his neglect to perform the duty which the will cast upon him to pay her the $200 at stated intervals he would acquire a right to share the moneys which he withheld from her.

"There is no suggestion that he did withhold payment, for any such reason; but the possibility of

his so doing illustrates the impropriety of holding that she should lose what was improperly withheld."

For the reasons stated, it is our opinion, therefore, that the trial court was in error in adjudging that the balance remaining in this trust estate became the property of the estate of Harry Weill, deceased.

The court was accordingly in error in overruling the appellant's motion for a new trial.

Judgment reversed. New trial ordered.

NOTE.—Reported in 45 N. E. (2d) 362.