In the Matter of the Construction of the Will of ALICE VAN DEUSEN, Deceased.

Surrogate's Court, Saratoga County, January 9, 1948.

*Francis E. Dorsey* and *Sheridan P. Wait* for Charles W. Bracket and others, as executors of the estate of Alice Van Deusen, deceased.

*John A. Slade* for Skidmore College.

*Frank S. Steenberg* in person.

TUCK, S. The twentieth clause of the last will and testament of Alice Van Deusen provides as follows: " All the rest, residue and remainder of my property both real and personal and wheresoever situate I give, devise and bequeath unto Skidmore College of the City of Saratoga Springs, New York, for the establishment of a fund to be known as the Charles C. Van Deusen and Alice Van Deusen Memorial Fund the income therefrom to be used for such purposes as the Trustees of Skidmore College may from time to time determine; provided, however, that the said fund be and hereby is charged with life annuities of Three thousand ($3,000.) Dollars each to be paid quarterly to Frank S. Steenberg, Charles M. Steenberg and Florence Steenberg Smith, nephews and niece of my late husband Charles C. Van Deusen, it being my intention that such annuities be paid in full even though the income from the said fund may be at any time insufficient and that only surplus income from the fund remaining after the payment of the said annuities for each year shall be used by Skidmore College during the lifetime of any of the said annuitants," etc.

A petition for a construction of this provision has been presented by the executors and the particular question which it is desired to have determined is when the said annuities accrued, whether upon the death of the testatrix or after the receipt of the fund by the residuary legatee.

In *Cunningham* v. *Parker* (146 N. Y. 29) a will provided: " I give, devise and bequeath unto my beloved son Alexander Whitford all the rest, residue and remainder of my estate, both real and personal, of what nature or kind soever, to have and to hold

the same to him, his heirs and assigns forever, on the condition and proviso that he pay to the above-named legatees respectively the legacies herein given within the period of four years after my decease, without interest; and the real estate so devised to my son Alexander Whitford is charged with the payment of the same." The Court of Appeals decided this provision was not a condition but that where the devisees accepted and went into possession of the land it became a covenant and the provision was not forfeited by reason of the failure of Alexander Whitford to make the payment within four years.

In *Matter of Watson* (149 Misc. 753) the Surrogate of Albany County construed a provision which read: " Marian Palmer must pay Winifred McCormack, my sister twenty dollars per week as long as she lives " and where there was a further provision in the will that " Dudley Norton to make an even division of every thing not mentioned herein between himself and Marian Palmer not selling any thing except Albany house and any other real estate I may own."

Upon the question as to when the payment by Mrs. Palmer to Mrs. McCormack should begin, the Surrogate held that there is no provision that the executors should make such payments and the responsibility for such payments is placed solely and personally upon Marian Palmer, that she should commence the payment of the weekly installments when she accepts and receives the legacy, etc.

There was an appeal in that matter to the Appellate Division (242 App. Div. 723), which reversed the decree of the Surrogate's Court and remitted the matter to the Surrogate's Court " to enter a decree in substantially the following form: That the annuity of twenty dollars per week bequeathed to Winifred McCormack is payable from the date of the death of testatrix; that as a condition precedent to the transfer of securities which will constitute the payment of the legacy bequeathed to Marian Palmer, she is required to furnish and file a bond with the Albany county surrogate conditioned for the payment of the twenty dollars a week annuity bequeathed to Winifred McCormack, such bond to be in the general form, and with sureties justifying in an amount approved by the surrogate of Albany county, and the sureties to be approved as to financial responsibility by said surrogate. In lieu of a personal bond, Marian Palmer may file a bond isued by a surety company in an amount directed by the surrogate of Albany county conditioned as above mentioned. By agreement of the parties Winifred McCormack and Marian Palmer or their attorneys, in lieu of a bond, the said Marian

Palmer may deposit securities agreed upon by the parties or their attorneys, with a depository agreed upon by them, such securities to be held by the depository as security for the payment of the annuity bequeathed to Winifred McCormack, subject to the order of the Albany County Surrogate's Court.''

In *Matter of Sneden* (154 Misc. 49) the fourth paragraph of the will of the deceased provided: '' I charge upon my said residuary estate an annuity in favor of my niece Ann Mary Smith, now residing in Marion, State of Pennsylvania, and I direct the payment by said residuary legatees (each one-half part of said residuary estate contributing equally) of the yearly sum of Five thousand Dollars during the life of my said niece Ann Mary Smith.''

Surrogate DELEHANTY construing that paragraph of the will held that nothing in the text defers the vesting or attaches any condition to the vesting of the legacy. There is no provision in the will for forfeiture or for gift over if the direction quoted is not obeyed. Accordingly it is ruled that the legacy is now payable by the trustees to the legatees. The legatees in accepting payment became personally bound to pay the annuity. (*Cunningham* v. *Parker,* 146 N. Y. 29; *Collister* v. *Fassitt,* 163 N. Y. 281.) And he further held '' The court deems it appropriate to follow the practice outlined in *Matter of Watson* (242 App. Div. 723, revg. 149 Misc. 753, cited to the court) and require either the furnishing of a bond or deposit of securities by the legatees in a sum reasonably related to the life expectancy of the annuitant and the amount of the annuity.''

In *Matter of Weir* (172 Misc. 74) a will was construed the third item of which read: '' All the rest, residue and remainder of my real and personal estate, I give, devise and bequeath to my four children [named]. To have and to hold the same to them, their heirs and assigns forever; and I order and direct that out of the income thereof, they shall pay to my wife * * * the sum of twenty-five hundred dollars per year, so long as she shall live, in quarterly payments in advance.'' In addition to this provision the testator also gave to his wife a legal life estate in certain real estate and directed the executors to keep the premises in repair and pay all taxes, assessments and insurance on the premises during the term aforesaid out of the residuary estate.

The court in construing the provision in respect to the annuity held that although the language of the will provided for payment out of income, the provision was nevertheless an annuity and that the income alone was not the only source from which

payment of the annuity should be made. Residuary legatees argued that they had consumed so much of the residuary that the income was not sufficient to pay the $2,500 annuity.

The court pointed out that since the provision of the will distinctly provided for the payment in advance the testator did not rely upon the income alone as the source from which the annual sum was to be paid and that reading the whole will together it is obvious that the principal as well as the income was applicable to the payment, and that the children of the deceased received a portion of the residuary charged with the obligation to pay the annuity. The court further held that it was the obligation of the fiduciary prior to making payments to the residuary legatees to require from them either the furnishing of a bond or the deposit of security adequate to assure the receipt by the widow of the annuity payments as they severally matured.

In *Matter of Katz* (49 N. Y. S. 2d 604) Surrogate GRIFFITHS of Westchester County wrote upon an application for a new hearing in a judicial settlement proceeding. In this will the testator gave to certain named nephews and nieces, being four in number, each one quarter of his estate and provided "For the time being, the income and capital shall be at the disposal of my two sisters and their husbands as follows: Selma Hirsch and her husband, Albert Hirsch. Rosalie Berney and her husband, Felix Berney. I ask my friend, Ivan Leib, jointly with my nephew Ernst Laton, to furnish a joint home for both families at the expense of the inheritance account (estate) and then they shall receive, per person and month, the amount of $60, namely a total of $240 per month. All expenses of Mr. Ivan Leib and Ernst Laton in connection with trips and all inheritance matters are to be paid from the inheritance account (estate) by mutual agreement. After the death of the last of the two families, the payment is to be made as mentioned above."

In a prior decision the Surrogate had concluded that the annuity was a charge upon the gifts in favor of the named nephews and nieces of the testator; that where there is no language disclosing an intent that the gift is to be dependent upon the performance of the conditions, the language will be held to import a covenant therein. Later the Surrogate wrote (p. 607): "An examination of the will discloses no disposition contemplating, or consequent upon, such result. There is no provision for a forfeiture or from which it might be inferred that the estate was dependent upon the performance of a condition. In such a case the payment of an annuity becomes the personal covenant of the donees of the property."

The court further determined that the rule that annuities are ordinarily payable from the death of the testator must yield to provisions in the will importing payment at some later date.

The court further held that the fund is presently payable to the legatees who by acceptance became personally obligated to pay the annuities.

The court further adopted the practice outlined in *Matter of Watson* (242 App. Div. 723, *supra*) in respect to the furnishing of a bond by the legatees.

In *Kearney* v. *Cruikshank* (117 N. Y. 95) the issue arose upon the claim of the representative of an adopted daughter of the testator for the apportionment of an annuity given her by the will of Benjamin Lord, who died July 5, 1851.

The provisions of the will directed the payment out of the residue and remainder of the net income of his estate to the person who was about to be adopted as the daughter of the testator of the sum of $2,000 a year for her life. Testator directed the residue and remainder of the net income should be paid over and divided among his brothers and sisters and after the death of one to whom the income from certain real estate was given for life and after the death of the annuitant the whole rest, residue and remainder of the estate, real and personal, should be divided among his brothers and sisters. The annuity payable to the person who was adopted by the testator was paid to her annually on the fifth day of July in each year after the death of the testator.

Prior to the passage of chapter 542 of the Laws of 1875, an annuity was not apportionable except in the instances where it was given by a parent to an infant child or by a husband to his wife living separate and apart from him. As to other annuities the rule of common law was that if the annuitant died even on the day of payment his representative could claim no portion of the annuity for the current year.

It was argued in that matter that the common-law rule of nonapportionability of annuities only applied where the day of payment was specifically fixed in the instrument creating it and had no application to the case of an annuity given in general terms.

The court held it had been long the settled rule that in case of a will, if no time is fixed an annuity given thereby commences from the day of the testator's death and the first payment is to be made at the end of twelve months from that time (citing 2 Williams on Executors 1288; *Gibson* v. *Bott,* 7 Ves. 89; *Houghton* v. *Franklin,* 1 S. & S. 392). The court reversed the judgment of the General Term and ordered judgment for the defendant.

From the foregoing review of the authorities, it seems that the annuities given in the will of Alice Van Deusen became payable in quarterly installments, the first quarter beginning on the date of the death of the testatrix.

There are some features in this matter which require different directions from those which are the general rule.

The annuitants have each waived the giving of any bond, undertaking or other security by Skidmore College as a condition to a receipt of the residuary estate of the deceased.

The deceased testatrix died March 29, 1947. The residuary legatee has not yet received its residuary legacy nor does it appear that it has received any part thereof.

The annuitants are entitled to interest on the quarterly installments due them.

To accelerate the receipt by the annuitants of their quarterly payments and to reduce interest charges it would not be inappropriate for the residuary legatee to consent or agree to the payment by the executors of these quarterly fractions of the annuities that are past due and which may become due in the future in advance of the receipt by the residuary legatee of its legacy so that the annuitants may properly receive their payments and so that the residuary legatee may be saved interest charges.

Submit decree upon notice.