In the Matter of the Estate of GEORGE J. GEIS, Deceased.

Surrogate's Court, Monroe County, April 11, 1938.

*Maun, Strang, Bodine & Wright* [*George F. Bodine* of counsel], for the executors.

*Remington & Remington,* for the missionary societies.

*Hoffenberg & Stone,* for the annuitants.

FEELY, S. On June 10, 1935, George J. Geis, a missionary, made his last will in Burma, on a blank form printed by the American Baptist Mission Press at Rangoon; and in so doing used language that minimizes the probability that this will was prepared by a person skilled in the law, although such assistance may have been available thereabout.

In this will, after a minor legacy to his wife of furniture, books and clothing, the residue, consisting of securities and cash, is to be divided in thirds, in the form of annuities — one for the wife, and the remaining two-thirds equally among two daughters and a son. In each of these four legacies the form or wording is substantially the same, to wit, the respective portion is " to be invested in annuities purchased from " one or other of the two designated missionary societies in whose service he had long been engaged, for the named son or daughters respectively, " or, in case of his " (or her) " death, for his " (or her) " children."

The one-third for the wife's annuity, and one-third of the special residue for that of the daughter Emma, and a like third for the son, Alfred, is to be purchased from the American Baptist Foreign Mission Society of New York, and a like third for the daughter Anna is to be purchased from the General Mission Society of the German Baptist Churches of North America, located at present (1935) at Forest Park, Ill.

The widow has accepted the provision for her as it is made, but in this judicial settlement each of the three children have notified the executors that they elect to take the capital sum in a lump now instead of the annuity payments.

The will not having been made under legal supervision, the language used in it cannot be as strictly construed as would be that of a skilled draftsman. However, the wording makes clear the intention of the testator to have been to give his wife and children the peculiar kind of annuity provided by the missionary societies in the service and employ of which he had spent all of his active life. To identify or ascertain the particular contract he intended

to bequeath by the use of a general description, evidence was admitted as to testator's knowledge, at and before the time he made this will, of the provisions of the annuity certificates issued by his missionary societies named in the same legacy.

Testator was shown to have procured several of these contracts in his lifetime; and to have had possession of one certificate for the benefit of his wife. He was also shown to have discussed the annuity plan of his societies with the secretary of the home office; and to have been informed by him that there was over all a residue inuring to the society, after the end of the periodic payments, which compared well with the like residue going to insurance companies selling like contracts of annuity assurance. While the mission society is not an insurance company strictly so called, or, rather, exclusively so, still it stands on the same actuarial and supervised financial basis as a commercial or exclusively insurance company in regard to annuities; the only difference being that the latter operates for private profit, whereas the mission society applies the profits of its assurance business, or residue over after the end of the periodic payments, to the public or charitable purpose which it mainly serves under the general title of missionary effort. For this reason, the public is solicited to make a " gift " to the mission society — as the certificate of annuity reads — in order to obtain one of its annuity contracts. In so far as the annuitant is concerned, the initial payment, under whatever name or motive, is strictly a " purchase;" but inasmuch as the residue, on general average, will go to the purposes of the mission society, without recourse, the initial payment to it is to that extent a charitable gift to the missions. In respect of the private beneficiary or annuitant the mission society is an " insurance " company in issuing these annuity certificates; and such an annuity is distinct from one charged on land, or on a private or individual person. Accordingly, the whole of the initial payment, now demanded in a lump by the annuitant beneficiary, cannot be considered as a " gift " to the society, but only that portion of it which on general average will remain at the end of the expectancy. This annuitant is not now in position to demand the whole initial sum, because the testator did not intend this legatee should receive the whole; but did intend that the probable residue should be given over to the charitable or benevolent purpose to which he had devoted all his life's work. By the language used in his will he intended to bestow the benefits of such a certificate or contract of annuity as is expressed in the standard form that has been in use by both these mission societies extensively and for many years.

On the argument the gift feature seems to have been overstressed. While the initial payment is not improperly called a " gift " in the certificate, it does give rise to a contractual relation as between the society on the one hand and the donor, or the annuitant on the other. A diversity of interest is contemplated; periodic payments of part to the child, and the residue to the society, on a distinctly insurance basis.

It seems also that too narrow a meaning has been placed by counsel upon the phrase " an insurance company " as used in section 47-b which was added to the Decedent Estate Law about five months before this testator died. This new section denies the common-law right of election on the part of the annuitant where the will of the person thereafter dying directs the purchase of an annuity from " an insurance company " without also expressly extending to the legatee the privilege of electing to take the capital sum outright. It does not seem likely that the Legislature intended thereby to confer a special, monopolistic privilege on the commercial or exclusively insurance companies, as distinct from other supervised bodies regularly selling annuities on an extensive scale and on the same basis, but in connection with other legal purposes. It seems rather that the Legislature intended to distinguish the annuities purchased from either sort of the sellers last mentioned, from the other annuities that are charged on land, or on a private individual legatee. A parallel case is found in the fraternal orders, and in the mutual benefit societies which in addition to their purely fraternal functions add various benefits in the form of money payments predicated on various contingencies of life, such as straight insurance and benefits for sickness, accident, burial, etc. Such societies in so far as their certificates contemplate such financial benefits are regarded in law as insurance companies, and their certificates as policies of insurance. (14 R. C. L. p. 840.)

Moreover, such statutes as section 47-b should be liberally construed in this respect, for they were adopted both here and in England to prevent the frustration, on comparatively technical reasoning, of the testator's clear, but incompletely expressed intention that payment to the annuitant be deferred and distributed in parcels over a period of time. Before that enactment the courts had taken a step in the same direction by denying the common-law election where there was a gift over. In the case in hand testator clearly understood that the societies would get the residue after the expectancy had expired; and he implicitly made that gift over when he referred in his will to the particular sort of annuity that these two societies were affording.

The effect of the phrase " or their children " was only casually discussed on the argument; and it was passed with the remark that it probably would be taken to refer to death of the annuitant in the lifetime of the testator. This point is not now decided.

My conclusion is that no right of election exists in the peculiar circumstances of this case, whereby any of the four legatees can compel the executors to depart from the testator's plan of deferred payments by turning over the whole of the capital sum at this time to the annuitant legatee.

Let the decree to be entered herein be framed in accord with this decision.