In the Matter of the Application to Compel Payment in the Estate of JOSEPH FISCHER, Deceased.

EMANUEL FISCHER and MILDRED SCHRAM GOLDEN, Petitioners, Appellants; LEILA F. DUNLAP, as an Executrix and Trustee, etc., of JOSEPH FISCHER, Deceased, Respondent, and FRANK FISCHER and ARTHUR FISCHER, as Executors and Trustees, etc., of JOSEPH FISCHER, Deceased.

First Department, February 7, 1941.

*Sidney S. Bobbé*, for the appellants.

*Samuel M. Fisher*, for the respondent.

MARTIN, P. J. Joseph Fischer died a resident of New York county. His last will and testament, which has been admitted to probate in the Surrogate's Court, gave the residuary estate to trustees in trust to pay ten dollars a week each to a brother and a niece. The will also contained the following direction:

" (c) I direct that my Trustees, as soon as in their opinion they can do so without injury to my Estate, shall take so much of the principal of said trust as may be necessary as well as such income, if any, from said trust not theretofore required for payment to my brother and niece as above set forth in subdivision (b) of this paragraph Second of this Will, and shall purchase therewith from some reputable life insurance company, bank or other organization authorized to issue the same, two annuities payable respectively to my said brother, Emanuel Fischer, throughout his lifetime and to my said niece, Mildred Schram Golden, throughout her lifetime, in the respective sums of Ten ($10.00) Dollars each per week."

The will is dated November 16, 1936, and a codicil, which is in no way involved here, is dated July 6, 1937.

On May 12, 1936, there became effective the provisions of section 47-b of the Decedent Estate Law, which then read as follows: " If a person hereafter dying shall direct in his will the purchase from an insurance company of an annuity, the person or persons to whom the income thereof shall be directed to be paid shall not have the right to elect to take the capital sum directed to be used for such purchase in lieu of such annuity, unless such will expressly provides for such right."

The beneficiaries of the trust claim the right to take the cash value of the annuities directed to be purchased and by their petition ask that the executors and trustees be directed to pay the same to them. The surrogate has held that section 47-b of the Decedent Estate Law is applicable, and that the annuitants have no right of election. The surrogate has treated the question as one of statutory construction. The only question before us is the applicability of section 47-b to the will of the decedent.

Prior to the enactment of section 47-b in 1936, where a will provided for an annuity with instructions to purchase the annuity, the annuitant had the right to elect to take the capital sum instead of having it invested for the purpose of producing the annuity.

(*Matter of Cole*, 219 N. Y. 435; *Matter of Bertuch*, 225 App. Div. 773.) The statute curtailing the right of election is, therefore, in derogation of the common law. Section 142 of the article on Statutes and Statutory Construction in book 1 of McKinney's Consolidated Laws, reads in part as follows: " It is a general rule that a statute in derogation of the common law is strictly construed to the end that the common law system be changed only so far as the words of the statute require. As a general rule, when a statute is intended to abrogate a common law right or to confer a right not vested by the common law, it will be so construed as not to go beyond the letter, and not even to that extent unless it appears to be according to the spirit and intent of the act. If a statute admits of two interpretations, that which more nearly conforms to the rules of the common law is to be adopted."

In *People* v. *Phyfe* (136 N. Y. 554, 558) the Court of Appeals said: " It is a familiar canon of construction that an intention to change the rule of the common law will not be presumed from doubtful provisions, and the presumption is that no such change was intended, unless the enactment is clear and explicit in that direction; and if the terms of the statute will admit of two interpretations, that which will most nearly conform to the rules of the common law is in all cases to be adopted."

It is urged that the purpose of the legislation was to give effect to a testator's intention to protect an annuitant against his own improvidence and against his creditors, and that where the will directs the purchase of an annuity from any authorized issuer of annuity policies, the wishes of the decedent should not be frustrated. In support of this contention, our attention has been called to the construction given to the statute by Surrogate FEELY of Monroe county in *Matter of Geis* (167 Misc. 357) where he said: " This new section denies the common-law right of election on the part of the annuitant where the will of the person thereafter dying directs the purchase of an annuity from ' an insurance company ' without also expressly extending to the legatee the privilege of electing to take the capital sum outright. It does not seem likely that the Legislature intended thereby to confer a special, monopolistic privilege on the commercial or exclusively insurance companies, as distinct from other supervised bodies regularly selling annuities on an extensive scale and on the same basis, but in connection with other legal purposes. It seems rather that the Legislature intended to distinguish the annuities purchased from either sort of the sellers last mentioned, from the other annuities that are charged on land, or on a private individual legatee. * * * "

In *Matter of Geis* (*supra*) it appears that the testator directed that the annuity be purchased from a named missionary society. The decedent had been a missionary and in his lifetime had purchased annuities from the named society, and the surrogate held that his will evidenced the intention to benefit the society itself by the use in its missionary work of any surplus derived from the purchase. Furthermore, speaking of the named missionary society, the surrogate said: " While the mission society is not an insurance company strictly so called, or, rather, exclusively so, still it stands on the same actuarial and supervised financial basis as a commercial or exclusively insurance company in regard to annuities * * *. In respect of the private beneficiary or annuitant the mission society is an ' insurance ' company in issuing these annuity certificates; and such an annuity is distinct from one charged on land, or on a private or individual person. * * * "

In passing, it may be remarked that the surrogate was of the opinion that statutes such as section 47-b should be liberally construed.

The statute, as we read it, destroys the right of election where the will directs the purchase of an annuity from an insurance company. No other medium is mentioned. Had the Legislature intended to take away the right of election in all cases where annuities were directed to be purchased from any source, clear language expressing that intention should have been used. An intention to limit the effect of section 47-b may be found in the Insurance Law. Prior to 1935 the Insurance Law of this State contained no provision authorizing the issuance of non-assignable annuity policies, but in that year section 55-c ▌ was enacted permitting the issuance of non-assignable, as well as assignable, annuity policies. In 1938 section 47-b of the Decedent Estate Law was amended so as to continue the right of election where the will provides for the purchase of an assignable annuity policy.

The will before us authorizes the trustee to purchase the annuities from " some reputable life insurance company, bank or other organization authorized to issue the same." This authorizes the trustees to select among the group mentioned, and this right of selection is sufficient to render section 47-b inapplicable.

Our decision is restricted to a holding that the annuitants' right of election under this will is not limited by section 47-b of the Decedent Estate Law. We do not undertake to decide whether, under all of the provisions of the will, the annuitants are entitled to payment of the capital value of the annuities provided for.

The order should be reversed and the matter remitted to the Surrogate's Court for further action in accordance with this opinion.

TOWNLEY and COHN, JJ., concur; O'MALLEY and CALLAHAN, JJ., dissent and vote to affirm.

Order reversed and the matter remitted to the Surrogate's Court for further action in accordance with opinion.