American Bible Society and John Early, Executor of Estate of Hattie L. Herrick, Deceased, Appellants, v. Albert B. Chase, Executor of Estate of Mary A. Herrick, Deceased, Appellee.

Gen. No. 10,379.

Opinion filed May 4, 1950. Released for publication May 23, 1950.

EARLY & EARLY, of Rockford, and McINTYRE & VAN STEENBERGH, for appellants.

JAMES M. BROWN and ROBERT F. MARSHALL, both of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

By this appeal, American Bible Society and John Early, as executor of the estate of Hattie L. Herrick, deceased, seek a reversal of an order of the circuit court of Winnebago county which directed said executor to pay to Albert B. Chase, executor of the estate of Mary A. Herrick, 20 per cent of the net balance of the estate of said Hattie L. Herrick. The cause is submitted to this court for decision as an agreed case under Section 48 of the Rules of Practice and Procedure of the Supreme Court. (Ill. Rev. Stat. 1949, ch. 110, par. 259.48 [Jones Ill. Stats. Ann. 105.48].)

On June 25, 1945, Hattie L. Herrick, seventy-seven years of age and a resident of Rockford, Illinois, executed her will, naming certain cousins, friends and

549

charitable institutions as legatees. On November 4, 1946, she died leaving an uncle, Walter E. Davis, her sole heir-at-law. Her will was duly admitted to probate and letters testamentary were issued to John Early on December 19, 1946. After directing the payment of her debts and disposition of her household goods and personal effects, the third clause of her will provided:

"The balance of my estate, of every kind, nature and description, including real estate, I direct shall be sold and reduced to cash, and after paying any debts or claims against my estate, taxes and costs of administration, including executors and any attorney's fees, I give as follows:

"(a) Twenty. (20%) per cent of the net cash on hand for the purchase of an annuity for life in the American Bible Society, Park Avenue and 57th Street, New York City, for my cousin Mary A. Herrick, 512 LaGrange Street, South Haven, Michigan. In the event she predeceases me, I give said twenty (20%) per cent outright to said Bible Society."

Said legatee, Mary A. Herrick, was a resident of Van Buren county, Michigan, and, at the age of ninety years, died testate on August 27, 1947. Appellee, Albert B. Chase, was appointed executor of her estate on October 30, 1947. On April 6, 1949, John Early, as executor of the estate of Hattie L. Herrick, filed his report in the probate court of Winnebago county, showing total receipts of $39,243.62 with disbursements amounting to $4,857.03, leaving a balance on hand for distribution of $34,136.59. The report prayed for an order of the probate court directing the executor to pay 20 per cent of said sum of $34,136.59 to American Bible Society. Albert B. Chase, executor of the estate of Mary A. Herrick, filed objections to this report in which he alleged that John Early, as executor, had not purchased the annuity which was directed

to be purchased under the will of Hattie L. Herrick, deceased, and consequently Mary A. Herrick, during her lifetime, had never received any payment under the provisions of said will; that immediately upon the death of Hattie L. Herrick, 20 per cent of her net estate became vested in Mary A. Herrick; that such vested estate is in fact a legacy of a definite sum of money and, as executor of the estate of Mary A. Herrick, he is entitled to receive that amount.

Upon a hearing, the probate court overruled the objections of Albert B. Chase, executor, and ordered John Early, as executor of the estate of Hattie L. Herrick, to pay to Albert B. Chase, executor of the estate of Mary A. Herrick, an annuity based upon her life expectancy and the length of time that she survived the said Hattie L. Herrick, and directed the balance of said 20 per cent of the net estate of Hattie L. Herrick, deceased, to be paid to American Bible Society. An appeal from that order to the circuit court of Winnebago county resulted in an order directing the executor of the Hattie L. Herrick estate to pay to the executor of the Mary A. Herrick estate, the full 20 per cent of the net balance of the estate as shown by the report of the executor.

The order of the circuit court found that Hattie L. Herrick, by the provisions of her will, made an outright bequest of 20 per cent of the net cash balance of her estate to Mary A. Herrick for the purchase of an annuity; that this 20 per cent of the net balance of the estate vested in Mary A. Herrick upon the death of Hattie L. Herrick; that Mary A. Herrick had a right to elect, prior to the time of the purchase of the annuity, whether she would accept the annuity or take the corpus of the fund bequeathed to purchase the annuity and that upon her death this right of election passed to her personal representative. Consistent with these findings, the trial court refused to approve

the final report of the executor of Hattie L. Herrick, deceased, and, as stated, directed the executor of her estate to pay to the executor of the Mary A. Herrick estate 20 per cent of the net balance of the Hattie L. Herrick estate.

Counsel for appellants insist that the will of Hattie L. Herrick did not make any outright bequest to Mary A. Herrick which vested 20 per cent of her net estate in Mary A. Herrick; that, as appears from the provisions of her will and the evidence disclosing her relationship with the American Bible Society, it was clearly her intention to give to the Society 20 per cent of her net estate subject to the obligation of that Society to pay to Mary A. Herrick, in accordance with the practice of that Society, an annuity as long as Mary A. Herrick should live; that Mary A. Herrick was only entitled to receive such annuity and had no election to take the corpus of the fund nor did the right of such election vest in the personal representative of Mary A. Herrick.

In order to sustain the judgment of the circuit court, counsel for appellee insists that there is no uncertainty or ambiguity in the will of Hattie L. Herrick and that by its provisions an absolute, unqualified, outright bequest of 20 per cent of the net balance of her estate was made to Mary A. Herrick for the purpose of purchasing an annuity, which the executor of her will was directed to do; that this bequest immediately became vested in Mary A. Herrick upon the death of Hattie L. Herrick and that she, the legatee, had the right to elect, prior to the time of the purchase of the annuity, to take the corpus of the fund so bequeathed, in lieu of the annuity payments, and since Mary A. Herrick died on August 27, 1947, before the annuity was purchased, the right to make this election passed to her personal representative.

American Bible Society was founded in 1816 and incorporated in 1841 by a Special Act of the Legislature

of the State of New York, as a nonprofit organization, for the purpose of publishing and promoting a general and wider circulation of the Holy Scriptures without note or comment. The outstanding character of its varied and comprehensive service is well known and universally recognized. It derives its entire income from gifts, donations and contributions made by interested persons. It issues an annuity agreement in any amount from $100 upwards certifying that a named person, desiring to promote the objects of the Society, has contributed and paid to the Society a named sum of money for the general purposes and uses of the Society and that in consideration thereof, the Society obligates itself and its successors to pay to a named person an annual sum in annual or semi-annual payments on certain designated days during the term of the natural life of a named person. The record discloses that the testator made contributions to the Society of small sums of money during the years 1933, 1934, 1935, 1936, and 1937. In her several letters to the Society, she characterized the work it was doing as "urgent," "valuable," "greatly needed" and "world wide." On November 27, 1937, she wrote the Society that she was interested in its work and was considering investing $100 in an annuity and asked for its booklet entitled, "A Gift That Lives." The Society promptly complied with this request and, referring to this booklet, wrote her on November 29, 1937: "You will find outlined in this booklet a suitable method of befriending the Bible and at the same time assuring a dependable income for yourself. We have prepared this booklet in question and answer form so that interested friends may become acquainted with every detail of our annuity plan. Your gift of $100.00 or more on the annuity basis would go toward the essential work of making the Bible more widely and more easily available, a service indispensable to the great missionary task of the Christian Church. The second

thing which I hope you will observe is that there is no red tape connected with securing annuity agreements. All you need to do is to fill in the information requested on the enclosed application blank and send it with a check or draft for the amount you wish to *give*."

On January 21, 1938, Miss Herrick again wrote the Society: "Owing to very busy days, I have delayed writing you regarding the annuity agreement with the Bible Society. I have one sister three years' younger than I. Each of us considers the other in deciding upon investments. We are the only living members of our family. Will you kindly send *us* the survivorship rates and any other information you have on that form of annuity investments. I think I wish to put a little money into this form of investment and hope, upon receiving your reply to this letter, to complete the matter quite promptly." On February 4, 1938, the Society wrote to her: "The Society is grateful to you for the gift of $100.00 which you have made on the annuity basis. We are happy to have your name on our list of annuitants and to welcome you into this friendly group of Bible-lovers scattered over all parts of the Globe. In accordance with your application, we have prepared the enclosed annuity agreement No. 8831 which will pay you $6.20 a year with payment due on February 4th." Miss Herrick acknowledged the receipt of this annuity agreement and on February 10, 1938, wrote the Society: "I have received my membership certificate in the American Bible Society and am happy to have a very small part in the work you are doing. In compliance with your request will state that I am a member of the Second Congregational Church, Rockford, Illinois."

In 1938, 1939 and in 1940, Miss Herrick made further contributions to the Society, and on December 2, 1940, wrote the Society to retain her $6.20 annuity which would become due the following February 6th. In

February 1942, she returned her annuity check of $6.20 to the Society and in November of that year made another contribution to the Society of $25 and on February 26, 1943, sent the Society $200, stating she desired another annuity. On March 2, 1943, the Society wrote her: "Thank you for your kind letter with generous gift in the amount of $200.00 on the annuity basis. It is a pleasure to enclose annuity agreement No. 12261 for $200.00 which will pay you $12.40 per year with payment due, as before, on February 4th." Subsequently, Miss Herrick sent the Society a further sum of $1,000 and received from it a third annuity agreement and from time to time sent the Society further gifts ranging in amount from $6.20 to $25.

The annuity applications she signed were addressed to the American Bible Society, stated the amount of the annuity agreement applied for, the date of the birth of the annuitant, the name of the person to whom the annuity payments were to be made and the name of the person who gave the annuity. The annuity agreements executed by the Society and which she received from the Society obligated the Society to pay her an annual payment, during her lifetime, of 6.2 per cent upon the several amounts received from her. Each agreement contained this clause: "And the American Bible Society hereby certifies that Hattie Louise Herrick desiring to promote the objects of the Society and in consideration of the execution of this annuity agreement, has this day contributed and paid to the Society the sum of (here is inserted the amount of money contributed) dollars for its general uses and purposes."

The pamphlet which Miss Herrick requested and which she received from the Society in 1937 is a small pamphlet of sixteen pages entitled, "A Gift That Lives." It is issued by the Society and contains the names of the officers of the Society, various illustrations and enumerates the advantages of its annuity

555

agreements and calls attention to the fact that the Society has a considerable group of Annuitants between eighty and ninety years of age and that these Annuitants know they are sharing in an agency vitally related to all Christian efforts and indispensable to the missionary efforts of the Christian Church. This booklet also contains a reduced facsimile annuity agreement and explains the nature of the agreements it issues. It is in question and answer form, and among others, the following questions and answers appear:

Q. "What is an Annuity Agreement:

A. "An Annuity Agreement is a legal contract in which the American Bible Society, in return for a gift of money, binds itself to pay to the holder (the holder being called an Annuitant) a specified sum every year as long as the Annuitant lives.

Q. "Why do American Bible Society rates differ from those of Life Insurance Companies?

A. "The American Bible Society and other religious, charitable and philanthropic institutions issuing annuity agreements cannot offer rates as high as the insurance companies pay. Insurance companies compute their rates on the theory that if the Annuitant lives the expected number of years, the entire principal will be consumed. With a religious or charitable organization, however, the arrangement is on the basis of making a substantial gift to the organization's work. An annuity gift is made to the American Bible Society for two purposes: first, to help in the work of translating, publishing and distributing the Word of God throughout the world; and second, to secure to the donor an annuity payable as long as he lives.

Q. "Are Annuity Agreements ever given as gifts?

556

A. "Frequently. In this way generous-minded people
.. . . make provision in their Wills to leave
annuities to relatives or friends rather than be-
quests of capital sums. In that way the Donor
has the satisfaction of knowing that the residue
from such annuities will be used for the extension
of Christ's Kingdom."

This booklet goes on to state that by securing an
annuity agreement the donor knows he is sharing in an
agency vitally related to all Christian efforts; that
hundreds of annuitants take out additional agree-
ments every year; that such agreements are especially
attractive to persons unacquainted with financial prob-
lems and responsibilities; that the rate on any agree-
ment is determined by the annuitant's age when it is
issued and the amount of payment does not increase
or decrease; that the purpose of an annuity agreement
is to enable a person interested in the work of the So-
ciety to make a gift to the Society and to receive regu-
lar annuity payments knowing that this income will
continue during the life of the annuitant and that at
the same time the contributor has made a generous
provision for the Bible cause, and that by securing
an annuity agreement, the donor knows he is aiding
the Society in its translation, publication and annual
distribution of more than seven million Bibles and
Testaments.

██ ██ The law seems to be well settled, as counsel
for appellee state, that a direction in a will to lay out
a certain sum in the purchase of an annuity for the
beneficiary entitles the beneficiary to receive the prin-
cipal sum in lieu thereof provided the annuity is ab-
solute and unqualified. (2 Am. Jur. 833; 3 C. J. 218;
69 C. J. 945; 3 C. J. S. 1384.) Among the cases cited
in support of this rule are *Reid v. Brown,* 54 Misc. 481,
106 N. Y. Supp. 27; *Parker v. Cobe,* 208 Mass. 260, 94

N. E. 476, 33 L. R. A. (N. S.) 978 and several English cases. It also seems to be the law that where it appears that an annuitant is entitled to so receive the principal of a fund, in due course of administration, his death after that of the testator, before the purchase of the annuity, will not defeat the right of his legal representatives to receive a sum sufficient to have purchased the annuity at the date of the testator's death, as immediately upon such death, his right to take the value of the annuity in cash instead of the annual payment became vested. (2 Am. Jur. 883.)

*Reid v. Brown,* 54 Misc. 481, 106 N. Y. Supp. 27, *supra,* was an action brought to construe the following clause in the will of Edward J. Brown: "I give and bequeath to Antoinette Marsh Reid, wife of Willard C. Reid, such annuity, payable half yearly during her life, as the sum of fifteen thousand dollars will purchase. I direct my executrix or executrices to expend the sum of fifteen thousand dollars out of my estate in the purchase of such annuity, payable to said Antoinette Marsh Reid half yearly during her life, by such insurance company or companies or other corporation or corporations as my executrix or executrices may select." The next clause in this will provided that in case Antoinette Marsh Reid should predecease the testator then the said sum of $15,000 was bequeathed to various charitable organizations. Mrs. Reid survived the testator and elected to take the sum of $15,000 in lieu of the annuity which might be purchased therewith. In holding that she had that right the court quoted 2 Am. and Eng. Encyc. of Law (2d Ed.) 399, where it is said: "Where an absolute and unqualified annuity is given, with instructions to invest a sum sufficient to purchase the annuity, the annuitant may elect to take the capital sum instead of having it invested for the purpose of producing the annuity." The court then cited *Ford v. Batley,* 17

Beav. 303; *Stokes v. Cheek,* 27 Beav. 620 and *Wakeham v. Merrick,* 37 L. J. Eq. (N. S.) 45, L. J. 1868, 16 Wkly, Rep. 73, 17 L. T. (N. S.) 134, and stated that the precise point of the right of an annuitant to elect to take the fund instead of the annuity which it would buy had never been passed upon in New York but that the fundamental principle underlying the English cases; *viz,* that an annuity is only a transferable legacy, had been repeatedly adjudicated in the New York courts. The court then observed: ''So far as the estate is concerned, the exercise of election by taking the principal of the fund is not detrimental to the estate, because, whether it goes to the annuitant, it is absolutely lost to the estate. In this vital respect a fund expended to raise an annuity differs from a fund set apart in trust to raise income for a designated beneficiary. An annuity does not possess any element of a trust.''

*Parker v. Cobe,* 208 Mass. 260, 94 N. E. 476, 33 L. R. A. (N. S.) 978, *supra,* was a petition by the executors for the construction of that part of the will of Herbert F. Hanson which provided that $75,000 was to be laid out by trustees in the purchase of an annuity for Ruth H. Cobe during her life. The court held that Ruth H. Cobe was entitled to receive the sum designated by the testator for the purchase of the annuity together with interest thereon from the expiration of a year from the death of the testator and in its opinion said: ''It is settled law of England that a bequest of money to be used in the purchase of an annuity gives the legatee a right to the money, and he can insist that the annuity shall not be bought. (Citing cases.) This rule has found its most frequent application in case of bequests to be laid out in the purchase of annuities. But it is a general rule, applicable to a bequest to be laid out in the purchase of any object. (Citing cases.) The reasoning on which the rule is established is that

the legatee can sell the particular object as soon as it is bought, and the law will not require the performance of a nugatory act. Consequently it is of no consequence that the particular object is to be bought by the executor, and not by the legatee." In connection with the report of this case in 33 L. R. A. (N. S.) 978, there is a comprehensive note upon the right of a legatee, for whose benefit the purchase of an annuity is directed, to receive the principal in lieu of the annuity. (See also the Annotation in 169 A. L. R. 1360.)

In 69 C. J. 945, sec. 2133, in the article on Wills, it is said that according to some authority, an annuitant may elect to take a capital sum where there is a direction in the will to the executor to purchase an annuity for a named beneficiary, but that where there is a valid gift over of the capital sum to others on the termination of the annuity, the annuitant cannot elect to take the capital sum necessary to purchase the annuity.

▇▇▇ The authorities holding that the beneficiary of an annuity can insist that the annuity shall not be bought and that the annuitant has a right to take the capital sum instead of the annuity base their conclusion upon the fact that the beneficiary could sell the annuity as soon as it is bought and the law will not require the performance of a nugatory or vain act. It is true that a simple annuity is a chose in action and as such is assignable or releasable by the annuitant but an assignment of an annuity cannot be made where it would defeat the clearly expressed purpose of the party granting it (3 C. J. S. 1383, 1384). And if any doubt exists as to the absolute character of the grant of an annuity the court may proceed upon the assumption that the annuity is for life only and so deny to the annuitant the right to take the corpus. (2 Am. Jur. 833.)

▇▇▇ In the instant case, the annuity in the will of the testator did not bequeath a capital sum in any

amount to Mary A. Herrick. It gave 20 per cent of her net estate for a definite expressed purpose and that purpose was the acquisition of an annuity in a named Society and that Society was the American Bible Society. The testator, prior to the execution of her will, had made numerous and substantial contributions to that Society and knew the character of the annuity agreements the Society issued. She also knew the amount of money her cousin, Mary A. Herrick, would receive from the Bible Society each year after that annuity was acquired, and she also knew that when Mary A. Herrick died, the annual payments would cease and whatever remained would be used by the Bible Society in the work it was chartered to do and in which the testator was deeply interested.

*In re Geis' Estate,* 167 Misc. 357, 3 N. Y. S. (2d) 770, it appeared that the testator, after making a minor legacy to his wife directed that the residue of his estate, consisting of securities and cash, should be invested in annuities to be purchased from two designated Missionary Societies for the benefit of his wife, son and two daughters. One of the Societies was the American Baptist Foreign Mission Society of New York, the other the General Mission Society of the German Baptist Churches of North America. The widow accepted the provision for her, but each of the three children notified the executors that they elected to take the capital sum in a lump sum instead of annuity payments. In holding that no right of election existed, the court stated that the evidence disclosed that the testator had been engaged in the service of these societies for many years, that he had procured several of these annuity contracts in his lifetime and had discussed the annuity plan of the societies with the secretary of the home office and had been informed by him that there was a residue enuring to the society after the end of the periodic payments which compared well with the like residue going to insurance

561

companies selling like contracts of annuity assurance. The court pointed out that the difference between a commercial insurance company and the Mission Society in regard to annuities was that a commercial insurance company operates for private profit, whereas a Mission Society applies the profits of its annuity business to the charitable purpose which it serves under the general title of missionary effort. The court then said: "The whole of the initial payment now demanded in a lump by the annuitant beneficiary, cannot be considered as a 'gift' to the society, but only that portion of it which on general average will remain at the end of the expectancy. This annuitant," continued the court, "is not now in a position to demand the whole initial sum because the testator did not intend this legatee should receive the whole, but did intend that the probable residue should be given over to the charitable or benevolent purpose to which he had devoted all his life's work. By the language used in his will he intended to bestow the benefits of such a certificate or contract of annuity as is expressed in the standard form that has been in use by both these mission societies extensively and for many years."

So in the instant case, the full 20 per cent of the net estate of the testator cannot be considered as a gift to the Bible Society but only that portion which on general average would remain at the end of the expectancy of Mary A. Herrick. During her lifetime, Mary A. Herrick could not have demanded the entire sum because Hattie L. Herrick never intended that she should receive the whole but she did intend that the probable residue would be devoted by the Bible Society to its work. Under the facts disclosed by this record, the rule announced in the *Brown* and *Cobe* cases, *supra,* cannot be invoked here. In those cases there was no element of gift contained in the direction to purchase an annuity as there is in the instant case.

562

The testator was deeply interested in charitable and religious organizations. By her will she made bequests to the Second Congregational Church of Rockford, Rockford Memorial Hospital, several missionary societies, the American Sunday School Union and the Rockford Chapter of the American Red Cross. That she regarded the American Bible Society as an object of her bounty is reinforced by the substitutionary gift to the Society in case Mary A. Herrick should predecease the testator.

In *Cahill v. Michael*, 381 Ill. 395 at page 400, it was said that the intention of a testator is to be ascertained from the words employed in his will; that while surrounding circumstances will not be considered by the court to vary an intention clearly expressed, yet in order to construe a will, the court will examine the surrounding circumstances for the purpose of placing itself in the position of the testator as it existed when the will was made. When considered in the light of the circumstances and conditions which surrounded Hattie L. Herrick when this will was executed, she clearly stated her intention and that intention was that her cousin, Mary A. Herrick, should receive a stated definite amount from the American Bible Society so long as she lived and nothing else, and it follows that she never intended that Mary A. Herrick should receive a lump sum in lieu of such annual payments.

By the express provisions of her will, the testator gave to four named cousins a definite percentage of her net estate. By the paragraph involved in this proceeding, she directed her executor to acquire from the Bible Society a contract for the benefit of her cousin, Mary A. Herrick, then ninety years of age. To now permit the personal representative of Mary A. Herrick to receive the entire amount which the testator had directed her executor to contribute to the Bible Society in return for an agreement to pay a life annuity to her

cousin, violates the intention of Hattie L. Herrick as expressed in her will. The judgment of the circuit court of Winnebago county is reversed and this cause is remanded to the probate court of that county with directions to enter an order in accordance with this opinion.

*Reversed and remanded with directions.*