In the Matter of the Accounting of GUARANTY TRUST COMPANY of New York, as Substituted Trustee of a Trust Created between JEAN FERRIS, as Settlor, and Guaranty Executor and Trust Company, Limited, as Trustee, Respondent-Appellant. JOHN W. HARRIS et al., Appellants; ANTHONY J. ROMAGNA, as Guardian ad Litem of CHANTAL L. M. F. D'ESPINAY, an Infant, et al., Respondents-Appellants; THOMAS B. GILCHRIST, as Ancillary Executor of JEAN F. D'ESPINAY-DURTAL, Deceased, et al., Respondents.

First Department, December 20, 1955.

*William T. Griffin* of counsel (*Francis A. Booth* with him on the brief) for John W. Harris, and another, infants, and another, appellants.

*George A. Spiegelberg* of counsel (*Laurence Rosenthal* with him on the brief; *Strasser, Spiegelberg, Fried & Frank,* attorneys), for Charles L. d'Espinay-Durtal, respondent-appellant.

*Walter D. Fletcher* of counsel (*John C. Hover, Peter C. McBean* and *Peter M. Ward* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl,* attorneys), for Guaranty Trust Company of New York, as substituted trustee, respondent-appellant.

*Anthony J. Romagna,* in person, of counsel (*Arthur H. Printz* with him on the brief), for Anthony J. Romagna, as guardian ad litem of Chantal L. M. F. d'Espinay, an infant, appellant.

*Bernard Cowen,* appellant in person and of counsel for Josephine Grove and others, appellants.

*Catherine Noyes Lee* of counsel (*Hampton D. Ewing, Jr.,* with her on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for Thomas B. Gilchrist, as ancillary executor, respondent.

*Charles H. Tuttle* of counsel (*Breed, Abbott & Morgan,* attorneys), for Breed, Abbott & Morgan, respondents.

BOTEIN, J. On a prior appeal in this matter, one of the major issues involved the right of d'Espinay, the settlor's second husband, to take an annuity pursuant to a reserved right of appointment exercised by the settlor (276 App. Div. 990, affd. without opinion, 302 N. Y. 752). After holding that he was entitled to the

annuity, this court went on to say: " As annuitant, d'Espinay does not have any right to elect to take his annuity in a capital sum; but on disclosure of all relevant facts and figures, if the court then deems it advisable for the interests of the children, primary object of the settlor's bounty, the court may compute and determine the commuted value of the annuity in the hands of the trustee, pay over such capital sum to the annuitant less estate taxes apportioned thereon and after paying the outright appointees, estate taxes and all expenses thereon, distribute the balance discharged of any lien, to the remaindermen or the guardians of their property appointed to receive the same " (276 App. Div. 990, 992).

The matter was referred to a Referee for the purpose of taking and stating the account of the substituted trustee and also to report upon a number of other issues. Special Term has confirmed *in toto* the report of the Referee, and the first of the two appeals under consideration here is taken from certain provisions of that order of confirmation.

It was adjudged that commutation of the annuity was in the best interests of the settlor's children, who are remaindermen of the trust out of which the annuity is to be paid. Special Term approved the Referee's recommendation to commute the annuity as of September 19, 1951, choosing that date because it was the anniversary of the settlor's death nearest in point of time to April 12, 1951. The latter date was when the Court of Appeals affirmed this court's decision that the annuity was valid, and that under certain circumstances (as above quoted) it could be commuted. The annuitant was also awarded the specified yearly instalments for the ten years intervening between the date of the settlor's death and the date of commutation, with interest at the rate earned by the estate.

In fixing the 1951 date the Referee in Special Term relied on the holding in *Dunham* v. *Deraismes* (165 N. Y. 65, 69, 70). It is true that the court held in the *Dunham* case that the lien of the annuity might be discharged by paying its " present value ". However, in that case the manner in which the lien of the annuity could be discharged was not litigated expressly, the basic question being whether the annuity itself survived the date that the testator's youngest son reached his majority. Also, at the time the Court of Appeals rendered its decision in the *Dunham* case, sixteen annual annuity payments had already been made, and a number of other payments subsequently due had accrued but not been paid. Under such circumstances, any commutation of the annuity as of the date of the settlor's death would have had to

encompass some formula for crediting the trust estate with the sixteen payments actually made to the annuitant — and such credits might have diminished the commuted value of the annuity to an unconscionable extent. That the court was making a pragmatic decision, dictated by unique circumstances, is evidenced by the fact that on reargument it did not allow interest on the many annuity instalments that were accrued and unpaid prior to the commencement of the action (*Dunham* v. *Deraismes,* 166 N. Y. 607).

The cases cited by the annuitant in which there were references to ascertainment of the present value of the annuities at the termination of the trust would appear to be authority for commutation as of the date the trust ends — which in this case would be the date of the settlor's death (*Buchanan* v. *Little,* 154 N. Y. 147, 152; *People's Trust Co.* v. *Flynn,* 188 N. Y. 385, 392; *Matter of Fenton,* 123 Misc. 658, 666, affd. 214 App. Div. 754). In each of these cases the present value referred to was the value at the date of death of the settlor. In each instance the court fixed a point of time preceding the termination of the trust involved and looking toward a future point of time when the trust would terminate and the annuity would become commutable.

There are no circumstances in this case that should impel a court to grope for so variable and uncertain a date at which the commuted annuity is to be measured. The date when the Court of Appeals decision was reached, while perhaps reflecting some surface expediency in this particular matter, is too fortuitous as the point for valuation to withstand analysis. In contemplation of law, once the Court of Appeals had decided that the annuity was valid, its validity was established not from the date of decision but as of the date that the settlor testatrix died. " It has, long been the settled rule that in case of a will, if no time is fixed, an annuity given thereby commences from the day of the testator's death, and the first payment is to be made at the end of twelve months from that time." (*Kearney* v. *Cruikshank,* 117 N. Y. 95, 100.)

The date of the settlor's death provides a precise and easily fixed point of time for ascertaining the value of an annuity. Furthermore, it affords no scope for delay, derangement or maneuvering by litigants, as might a date hinging upon a decision by an appellate court. Inequities may be brought to pass by the passage of time, but they do not justify *ad hoc* treatment. As was stated in a somewhat similar context: " Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's

life interest must be estimated by the mortality tables. Our opinion is not changed by the necessary exceptions to the general rule specifically made by the Act." (*Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 155.)

The annuity should be commuted as of the date of settlor's death, namely, September 19, 1941, payable with interest at 6% from that date.

The substituted trustee kept substantial principal and income cash balances on deposit with itself as a banking institution during the accounting period. No claim is made that in so doing it acted wrongfully or improperly. In fact, such practice is authorized explicitly by the provisions of subdivision 1 of section 100-b of the Banking Law. The guardians of the infant remaindermen contend that the trustee is liable for interest on the self-deposits. Upon recommendation of the Referee Special Term charged the trustee with interest at the rate of ¾ of 1% per annum on such balances.

There is no statutory requirement for the payment of interest by an *inter vivos* trustee, although there is such a provision for payment by court-appointed fiduciaries (Banking Law, § 100-b, subd. 4). The Referee relied on *Herzog* v. *Title Guar. & Trust Co.* (148 App. Div. 234, mod. on other grounds 210 N. Y. 531) interpreting that case as holding that even in the absence of any statutory provision requiring the payment of interest on self-deposited funds of an *inter vivos* trust, the trustee was nevertheless required to allow a fair rate of return on the trust cash balances. The trustee in the *Herzog* case appears to have been held responsible only for the rate of interest customarily paid by banks on similar types of deposit (p. 236). The opinion is not authority for surcharging a corporate trustee with interest on proper and appropriate self-deposits, where no market value for the interest on such deposits has been established (see, also, 2 Scott on Trusts, § 170.18, and 3 Bogert on Trusts & Trustees, [part 2], § 598; cf., *Matter of McKay,* 5 Misc. 123, 133; *Matter of Scudder,* 21 Misc. 179, 187, and *Matter of People's Trust Co.,* 169 App. Div. 699, 700).

There was just such a prevailing rate for interest in the period covered by the accounting in the *Herzog* case, because of competitive practices existing at that time; and the trustee was held only to the payment of such customary rate. However, the Referee in this case has explicitly found that the custom of paying interest on bank deposits no longer prevailed among commercial banks in the accounting period under consideration here. It was because of the absence of such a custom that he recom-

mended surcharging the trustee at the minimum rate of interest that trust companies acting as court-appointed fiduciaries must pay (Banking Law, § 100-b, subd. 4).

The surcharge of interest on the cash balances held in the trust is improper and cannot be sustained.

The order of September 22, 1954, should be modified to conform with the foregoing and otherwise affirmed. Settle order on notice.

The second appeal is from an order by an Official Referee designated to hear applications for allowances and to determine the reasonable value thereof. When the matter of interim allowances in this case previously came before this court, we said of certain applicants that " [t]he matter of their allowances should wait until the proceedings are substantially terminated, so that the full measure of their success, as well as the benefits, if any, to the estate or fund and the entire cost of the litigation may be ascertained or at least approximated." (277 App. Div. 1030, 1031.) In the present posture of the case this injunction holds true for all applications for allowances.

The applications under review now were referred to an Official Referee in the expectation, perhaps too sanguine, that the proceedings had been " substantially terminated ". Developments subsequent to that referral give no such assurance. As pointed out by counsel for d'Espinay, there have been further proceedings and appeals since the periods covered by the present applications — and there may be still more.

Therefore, the allowances are prematurely made and their fixation should be deferred until this bitter, protracted and expensive litigation has finally ended. The reference should be held open, so that there will be no need to duplicate the extensive proof already submitted to the Official Referee; and upon the conclusion of this litigation the applicants may, if they deem it appropriate, revise their requests and submit additional proof. In this respect we call to the attention of the applicants the previously expressed presentiments of the court about the ultimate expenses to the trust beneficiaries (277 App. Div. 1030, 1031).

The order of the Official Referee dated March 3, 1955, should be modified accordingly. Settle order.

Cox, J. (dissenting in part). I concur in the majority opinion except insofar as it adopts the findings of the Referee in connection with the formula to be used in apportioning the Federal estate tax and the tax interest. As of the date of death of the

settlor, the trust assets had a total value of $1,815,700.94. The settlor was a nonresident and, under the tax compromise agreed upon herein, the United States Treasury bonds in the sum of $228,487.40 were considered nontaxable. Thus, the gross taxable estate was $1,587,213.54. The gross administration expenses, as sanctioned by the tax authorities, totalled $73,815.15. Of this amount, $64,534.12, being the portion of the administration expenses allocable to the taxable assets, was allowed as a deduction. The balance of $9,281.03, the amount allocable to the nontaxable assets, was not allowed as a deduction. Thus, the trust assets subject to Federal estate tax under the terms of the tax compromise had a value of $1,522,679.42. The Referee determined the formula to be: the value of the annuity as the numerator of the fraction and, for the denominator, he deducted from the gross estate the total administration expenses of $73,815.15. However, he included the nontaxable treasury bond in the sum of $228,487.40; the denominator of his fraction thus became $1,741,-885.79. This formula does not comply with section 124 of the Decedent Estate Law. The correct formula should be the value of the annuity as the numerator and the net taxable estate amounting to $1,522,679.42 as the denominator. The court stated in *Matter of Kaufman* (170 Misc. 436, 445): " The court is bound by the actual fact of inclusion or exclusion of property by the taxing authorities. * * * The court is not a reviewing body. It may not say that something else should have been done by the taxing authorities that in fact was done. It takes the accomplished fact of taxation and then allocates the burden on the basis of actuality of tax." The Referee's determination disregards the actuality of the tax imposed upon the trust estate.

The Referee used the same formula as above in determining the tax interest to be paid by the annuitant. His determination on this point should be modified.

I dissent in reference to the allocable tax and the interest thereon and vote to modify the Referee's report in accordance herewith.

PECK, P. J., COHN and RABIN, JJ., concur with BOTEIN, J.; Cox, J., dissents in part in opinion.

Order of September 22, 1954, modified to conform with the opinion herein and otherwise affirmed. Settle order on notice. Order of the Official Referee, dated March 3, 1955, modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.