S. Samuel Di Falco, S.
The sole question raised in this application to compel the executor to account, is whether the petitioner is entitled to her annuity from the date of the decedent’s death or from the first of the month following the issuance of the annuity contract. In article sixteenth of the will, the decedent bequeathed to each of the four persons therein named an annuity in the amount set opposite their respective names to be paid in monthly installments “in accordance with the provisions of paragraph B hereof.” Paragraph B of article six *603 teenth reads as follows: “I direct that my Executor shall provide for payment of the said annuities by purchasing from a life insurance or annuity company in good standing in the State of New York, or elsewhere, a non-assignable annuity contract providing for payment of the annuities hereinabove provided for and by delivering the annuity contract so purchased to each of the said annuitants, which delivery shall constitute a complete satisfaction of the annuity.”
Petitioner is to receive an annuity of $3,600. The total of the annuities in article sixteenth is $23,200. The decedent died on August 4, 1964. It appears from the agreed statement of facts submitted by the parties that the assets of the estate consisted mainly of 82%% of the issued stock of Julian Messner, Inc. The stock was sold for $948,750 and the purchase price was deposited in the estate account on January 4, 1965. The other assets of the estate were not sufficient to enable the executor to purchase the insurance policies, which actually cost in excess of $300,000. The executor delivered the policies on April 8, 1965. Petitioner’s policy provides for the first monthly payment of $300 on May 2, 1965. Petitioner contends that the annuity was payable from the date of decedent’s death, and that she is entitled to $2,700, representing payments of $300 per month for the nine months from August 4, 1964. The executor argues that subdivision B of article sixteenth provides for the satisfaction of the annuities by the purchase and delivery of a nonassignable annuity contract, that article twenty-third of the will provides for payment of the annuities from the proceeds of sale of the stock of Julian Messner, Inc., a specific fund which Avas not in existence at the death of the testatrix. He contends that he complied Avith the directions of the will and delivered the annuity contract to the petitioner immediately after the lapse of seven months from his appointment.
The tAventy-third article of the will, insofar as material here, roads: “I direct my Executor * * * to sell all my right, title and interest, whether evidenced by stock or otherAvise, in and to the corporation known as Julian Messner, Ino. * * * as soon after my decease as may be practicable, but in no event longer than a period of six (6) to nine (9) months, and upon such terms or credit as may in his opinion be suitable and necessary, but in no event shall such sale be made for an initial cash sum less than that sufficient to satisfy the purchase of the annuities herein provided for and to pay the specific bequests herein provided for, together with all taxes which may be assessed against my estate as inheritance taxes as herein provided.” The article empowered him to offer the business first *604 to certain key employees, “ but in no event shall the cash to be paid on such purchase be less than the sum needed to carry out and pay the specific bequests and annuities herein provided for.” Pending the sale of the business, the executor was authorized to continue it.
■ It will be noted that the will does not direct the executor to continue the business for six or nine months. It directs him to sell it as soon as practicable but not longer than nine months after her death. The will does not restrict the annuities to a specific fund. Practicalities did, of course, restrict all legacies to the'assets which the testatrix owned, and as in every estate, they could be paid only when assets were converted to cash.
The principles of law governing annuities in this State were derived from the law as developed in England. (See Matter of Cole, 219 N. Y. 435, 437; Matter of Maybaum, 296 N. Y. 201, 205.) A direction in a will to purchase an annuity was regarded as a legacy of the definite sum required to purchase the annuity. (Matter of Cole, supra.) Until the enactment of section 47-b of the Decedent Estate Law, such a direction conferred upon the beneficiary the right to elect to take its commuted value. (Matter of Maybaum, supra; Matter of Fischer, 261 App. Div. 252, 253-254.) It is settled law that an annuity commences from the date of the testator’s death, unless the will otherwise provides. (Kearney v. Cruikshank, 117 N. Y. 95, 100.) The commuted value of the annuity is to be figured as of the date of the donor’s death (Matter of Ferris, 286 App. Div. 794, 797; Buchanan v. Little, 154 N. Y. 147, 152; Matter of Fenton, 123 Misc. 658, 666, affd. 214 App. Div. 754), unless, of course, the will otherwise directs. It is clear, therefore, that the annuity would commence on the date of the decedent’s death unless her will prescribes or fixes a different date.
There is nothing in this will indicative of an intention to depart from the usual rule unless it be that the direction relating to the insurance policy, either alone or in conjunction with the provisions respecting sale of the business, reflects an intention that the annuity is to commence at a future date. We must recall that the courts have always drawn a distinction between a direction to purchase an annuity and one to pay an annuity from the estate (Matter of Maybaum, supra, p. 205), and that it was only the direction to purchase that gave rise to the right to elect to take the commuted value (id.). There is no question here of such an election, the annuity being nonassignable (Decedent Estate Law, § 47-b), but the decisions relating to the date for valuing an annuity are very pertinent in determining the date when it commences because valuation is so dependent upon *605 duration. The courts never appear to have regarded a direction to purchase an insurance policy as indicative of an intent to postpone the commencement of the annuity. Insofar as the date of commencement or the determination of commuted value is concerned, no different rule appears to have evolved in respect of purchase of insurance policies than in respect of purchased annuities generally.
In England the subject received the attention of the Court of Appeal (Matter of Robbins, 1907, 2 Ch., 8). The testator in that case directed the fiduciaries ‘ ‘ to purchase in the name of [his] wife * * * a Government annuity of the clear annual value of 400 [pounds] ”. The testator’s widow died shortly after his death and her administrator elected to take the capital sum. The argument of the residuary legatee in that case is ■similar to the argument in this case. The court stated it thus (pp. 12-13): “ The order under appeal declares that the widow’s representatives are entitled to such a sum as at the date of the death of the testator would have purchased a Government annuity of 400 [pounds]. It is contended that this must be Avrong, because if a Government annuity had been purchased it would only run from the date of the purchase, and that, assuming the widow to have survived, the annuity would run from the end of tAvelve months, Avhen legacies are payable, or from such earlier period as the executors might think fit to pay legacies”. The court was unanimous in declaring that argument to be unsound. Said the court (p. 13): “ It is well settled that a simple gift of an annuity is a gift of an annuity commencing from the testator’s death, and we are unwilling to hold that a proAdsion intended to secure the annuitant by purchasing a Government annuity has the effect of depriving the annuitant of the Avhole annuity during the first year. In the absence of authority to the contrary we are prepared to hold that the character of the annuity does not depend upon the form in which it is secured, and that in the absence of words defining the date of its commencement it ought in all cases to commence from the testator’s death. The practice of the Court in valuing an annuity where there is a deficient estate is always to ascertain its value at the death of the testator. The purchase of a Government annuity may not be possible on the prescribed day, where a particular time is prescribed, such as within three months, either by reason of the impossibility of realizing sufficient assets before the day arrives or by reason of the Bank offices being closed. In such a case we think there is an implied gift of the annuity out of the testator’s estate from the prescribed day until the purchase is made. And when no time is prescribed *606 there is an implied gift of the annuity from the testator’s death until the purchase is made.”
The court is of the opinion that the cited decision correctly applies the rules that are applicable, here as well as in England, and that the petitioner is entitled to payment of her annuity from the date of the decedent’s death. The realization by the decedent that the annuities could not be paid until her interest in the corporation was liquidated, cannot be viewed as indicative of an intent to postpone payment of the annuities. The provisions relating to sale of the business do not reflect an intent to delay liquidation of the corporation. On the contrary, there is expressed the intent that liquidation should be as speedy as possible. The decedent was endeavoring to express a limitation, not an extension, of time for converting her assets to cash.
The provision of the will directing the purchase of an insurance policy does not clearly reveal an intent to postpone payment of the annuities. The testator said: ‘ ‘ I give and bequeath to each of the following named persons who shall survive me during their respective lives an annuity of the amount set opposite their names to be paid in monthly installments in accordance with the provisions of paragraph B hereof.” Thus far we have the ordinary common-law annuity, with nothing to change its commencement date unless we find it in the paragraph to which reference was made. Paragraph B commands the purchase of an annuity from an insurance company, the delivery of the insurance contract to the annuitant and it concludes with the words, ‘ ‘ which delivery shall constitute a complete satisfaction of the annuity.” What that paragraph plainly means is that the delivery of a proper contract by the executor will operate as a full discharge to him and to the estate for any future installments. It cannot fairly be interpreted as a discharge for past installments because nothing in the will fixes the time within which the executor must act to purchase the contracts.
The executor contends that both the sale of the stock and the seven-month period for payment of legacies fix the time for delivery of the contracts. Letters testamentary were issued on September 1,1964, just short of a month from the date of death. The annuity contract was paid for on April 2, 1965, one day after the expiration of seven months from the issuance of letters. The cash legacies were paid on the same day. The proceeds of sale of the business had been received on January 4. The policy was delivered on April 8. Thus the executor acted promptly after the seven-month period. However, the will says nothing about a seven-month period. Even as limited by the *607 decedent, the executor had nine months to effect a sale of the business, but it was conceivable that a sale on the terms specified might not be possible within the fixed time in spite of every effort that the executor could possibly make. In such a case, the annuity contracts would not be delivered until the executor could obtain the cash to pay for them and to pay all general legacies.
It could not be disputed that in this case all of the general legacies were payable seven months after the issuance of letters because that is the time fixed by law for such payment in the absence of a different direction in the will. (Surrogate’s Ct. Act, § 218.) Interest on the legacies would begin to run from that date even if the business could not be sold until a later date. Under the same reasoning, the annuities would be payable one month from the date of death because that is the time fixed by law for payment of such annuities in the absence of a different direction in the will. The discharge of the executor and the estate by delivery of an annuity contract — whenever that might happen — was not intended as a discharge as to all installments then unpaid — however much they might be. As the court said in the Robbins case (p. 13): “ there is an implied gift of the annuity out of the ® * * estate from the prescribed day until the purchase is made.”
The court therefore holds that the petitioner is entitled to the first payment of the annuity on September 4, 1964 and each month thereafter until April 4. The installment due in May will be paid by the insurance company. It will not be necessary to order an accounting at this time unless the executor is unable to make the necessary payment.